At this term, the opinion of the Court was pronounced by
Sewall, J.
The petitioners and the respondents are heirs at law of Israel Hatch, deceased, who had been the, owner of, and until the time of his death, occupied the premises of which partition is prayed. If the premises descended to his heirs at law, the shares of the petitioners are correctly stated in their petition. But the descent is controverted by the respondents, who plead a sole seisin ; and, for an exclusive title in themselves, they rely upon two deeds produced at the trial, where the questions which have been argued were reserved.
* It seems to have been a question at the trial, although it has not been insisted on in the argument by the petitioners’ counsel, whether these supposed deeds ¡áre to be allowed to have any operation or effect, — considering the manner of their delivery, and the situation in which they were retained during the life of the grantor therein named, — the common ancestor of the petitioners and the respondents.
Upon this point, the circumstances in evidence are, that Israel Hatch, about four years before his death, signed, sealed, and acknowledged, the writings which were produced at the trial as deeds and which purport to be witnessed as deeds delivered The grantees named therein respectively are Joel Hatch, one of the *278 respondents, in one of them, and in the other Amos Hatch, since deceased, whose heir at law is the other respondent.
The two writings, if they operated as grants and conveyances, comprise the whole premises in controversy, which were thereby given, granted, and conveyed, in part to Joel Hatch and his heirs and assigns, and in part to Amos Hatch and his heirs and assigns.
There is no evidence of the privity or consent of either Joel or Amos in this transaction; but it is proved that the grantor deposited these writings, together with his last will, in the custody of John Turner, Esq., to be kept until the grantor’s death, and then to be delivered over to the respective grantees. And it is in evidence that they received the deeds after the death of their father.
There is certainly a want of technical skill and accuracy discovered in the mode adopted to express and effectuate the intentions of Israel Hatch, the ancestor, if these were to retain to himself, during his life, the use and occupation of the premises conveyed to Joel and Amos, and for the writings to take effect, consistently with that purpose, after the death of the grantor, and then to operate beneficially to the grantees, in exclusion of the other coheirs. The grantor was competent to this disposal of his property, and *his intentions were in every respect lawful. The doubt seems to be as to the form of conveyance, and we see very little ground for this.
v The delivery is an essential requisite to a deed, and the effect of it is to be from the time when it is delivered as a deed. But it is not essential to the valid delivery of a deed, that the grantee be present, and that it be made to or accepted by him personally at the time. (3) A writing delivered to a stranger, for the use and benefit of the grantee, to have effect after a certain event, or the performance of some condition, may be delivered either as a deed or as an escrow. The distinction, however, seems almost entirely nominal, when we consider the rules of decision, which have been resorted to, for the purpose of effectuating the intentions of the grantor or obligor, in some cases of necessity. If delivered as an escrow, and not in name as a deed, it will, nevertheless, be regarded and construed as a deed from the first delivery, as soon as the event happens, or the condition is performed, upon which the effect had been suspended, if this construction should be then necessary in furtherance of the lawful intentions of the parties.
*279 This subject was very fully examined in the case of Wheelwright & Al. vs. Wheelwright, (4) and the reasoning of the Chief Justice, in stating the opinion of the Court in that decision, establishes a rule for deciding the case at bar. The writings deposited with Mr. Turner by Israel Match, the ancestor, whether as deeds or escrows at that time, are to be considered as then effectually delivered to the use and benefit of the grantees named therein; they, Amos as well as Joel, having received them, and claimed under them the premises in controversy, after the death of the grantor, (a)
The objection principally insisted on for the petitioners respects one of these deeds only — that under which the heir of Amos claims the part of the premises in controversy described in the deed to him. It is argued that this * deed was destroyed after the death of the grantor, and after the delivery of the deed to Amos, or at that time, by an alteration made in it, which he suggested, and which Mr. Turner made. The alteration was to correct that deed in the descriptive part of the premises conveyed, where one Lapham is mentioned as an owner of adjoining land. In the deed he was called Joshua, which word, at the suggestion of the grantee, was altered to Joseph, that being the Christian name of the Lapham intended in that reference.
In the ancient books there are many dicta respecting deeds, which in modern cases and decisions have been either neglected or exploded, or so explained as to be rendered consistent with the security of titles and demands, depending upon written evidence, and subject at all times to a variety of accidents and misfortunes. The learning upon this subject is revised at large in the case of Reed vs. Brookman, (5) where, to excuse himself from a profert of his deed, the party alleges the loss of it by time and accident. And this may be compared with the case of Master vs. Miller, cited in the argument, where a material alteration in the tenor of a bill of *280 exchange was considered, by a majority of the Court of King’s Bench, fatal to the instrument.
In executory contracts, provable by written instruments, the remedy is sometimes lost by the loss of the evidence; and bonds and notes which have been altered in a material part by the obligee or payee, are no longer proof of an obligation or promise; which, when given by the party charged, was expressed in other words than the instrument adduced against him. This rule might possibly, though I doubt it, be extended in strictness, even at the present day, to alterations wholly immaterial, if made at the instigation of the party entitled by the instrument, although it were done innocently, and to no injurious purpose. '
But these rules have not the same operation where a title in real estate is in question. The cancelling of a deed will not divest property which has once vested by a transmutation * of possession. A man’s title to his estate is not destroyed by the destruction of his deeds. (6) The deed in the case at bar is evidence competent for the examination and consideration of the jury. Its credit might be impaired in some particular circumstances, while it continued to be, not only competent, but satisfactory evidence on the question on trial. In very ancient times, Lord Coke observes, judges did judge, upon their view, deeds to be void, if razed or interlined in material points or places; but of late times the judges have left that to be tried at the bar. (7)
The alteration objected to in the case at bar, however made, is so wholly immaterial, as in no respect to abate the credit, which the deed in question would otherwise deserve; and its competency to prove a title in Amos Hatch, which descended to his son, the respondent, remains, (b)
Judgment is to be entered for the respondents on the verdict.

 Co. Lit. 36, note 223, Day's edition.

 2 Mass. Rep. 447.

 [Quære, whether the instruments in the above case, and in the case of Wheelwright & Al. vs. Wheelwright, were not testamentary. It seems to be established that an instrument, whatever is its form, whether it be a deed poll or an indenture, is testamentary in its operation and quality, if it be intended not to operate till the death ot the party who made it.— Shergold vs. Shergold, 1 Phill. Rep. 10, note (h). Marwick vs. Taylor, ib. 10, note (i). Thorold vs. Thorold, ib. p. 1. Greene vs. Proude, 1 Mod. 117. Habergham vs Vincent, 2 Ves. 204, S. C. 4 Bro. C. C. 353. Nom. Stanfield vs. Vincent. — Peacock vs. Monk, 1 Ves. Sen. 132.— Hickson vs. Witham, 1 Ch. Ca. 248. — Metham vs. Duke of Devonshire, 1 Peer Wms. 529. — Rigden vs. Valier, 2 Ves. 258. — Healy vs. Copley, 7 Toml. P. C. 496. —Att. Gen. vs. Jones, 3 Price, 358. — Dyer, 314, b. pl. 97. — Powell on Devises, by Jarman, Vol. i, p. 10—52, and notes. — 1 Roberts on Wills, p. 145. —And it has been held that the intention of the maker may be gathered either from the instrument or from extrinsic testimony. — Liles vs. Liles, 2 Nott & M' Cord, 531 —Milledge vs. Lamar, 4 Dessaus. 617. — This view of these cases does not appear to have been taken either by the counsel or the Court. — Ed.]

 3 D. & E. 151

 2 H. Black. 259.—10 Co. 92.

 Co. Lit. 225, b.

 [Hunt vs. Adams, 6 Mass. Rep. 519.— Smith vs. Crooker, 5 Mass. Rep. 538.— But in Jackson, ex Dem. Malin vs. Malin, (15 Johns. Rep. 293,) it was held that an alteration, material or immaterial, in a deed or will, by a person claiming under it, renders it void. — Ed.]