BARRETT *v.* THORNDIKE.

There is a difference between contracts, or bonds, and deeds of conveyance of land, as to the effect of alterations made in them.

If a grantee voluntarily destroy his title-deed, or fraudulently make an immaterial alteration therein, his title to the land is not thereby impaired.

If the grantee, not having recorded his deed, voluntarily and without fraud surrender it to the grantor, this may be effectual, as between the parties, to revest the estate in the grantor, but cannot affect the rights of third persons.

In an action of trespass *quare clausum fregit,* the defendant, to prove his title to the land, read a deed from the *Twenty Associates* to one *Molineaux,* under whose administrator he claimed; to the validity of which deed it was objected on the part of the plaintiff that it had been altered after its delivery. It was proved by the plaintiff that the land was estimated, at the time

of the conveyance to contain four hundred acres, and had been so described in the deed; in which it was also fully described by metes and bounds; but that the word *four* had been erased, and *five* inserted in its stead. There was circumstantial evidence offered to the jury, raising a strong presumption that *Molineaux*, at the time of the conveyance, had represented the tract as containing only *four hundred* acres; that the proprietors, giving credence to this false representation, had conveyed it to him as containing that quantity; and that he had afterwards fraudulently altered the deed in the manner alleged.

The judge before whom the cause was tried at *nisi prius* instructed the jury that if the alteration had been fraudulently made by *Molineaux*, it would render the deed void as to him and his heirs, though such alteration did not materially change the legal construction of the deed. And thereupon a verdict was returned for the plaintiff, which the defendant now moved the Court to set aside.

*Thayer*, in support of the motion, contended that the alteration in this case was not material, it being of a word wholly inoperative; and that if immaterial, it was no matter with what intent it was made. *Henry Pigot's case*, 11 *Co.* 26. *Smith v. Crooker*, 5 *Mass.* 538. *Hunt v. Adams*, 6 *Mass.* 521. He also adverted to the distinction between contracts executory, and contracts executed, as conveyances of land, &c. to which last, it was argued, the cases respecting alterations did not apply. *Hatch v. Hatch*, 9 *Mass.* 307.

*Orr*, for the plaintiff.

It seems to be taken for granted that formerly it was holden that *every* alteration avoided a deed. But the fact is not so. Nor do the cases which have been cited reach the case at bar, none of them turning on the question of fraud, and they all being cases of immaterial alterations. The question of fraud can be tried only by the jury, to whom it has been very properly referred; and finding the fact of fraud, they rightly returned their verdict for the plaintiff.

[*Mellen C. J.* Suppose the alteration to be ever so material, or fraudulent, or the deed to be destroyed by the grantee, could this *reconvey* the land to the grantor?]

*Orr*. That question seems to be decided in the case of

*Goodwin v. Hubbard,* 15 *Mass.* 210.   But here, the only question was, whether the alteration was made fraudulently, or not; and this question is settled by the only tribunal competent to try it.

   *Longfellow,* in reply.

   The materiality of the alteration was a question of construction, merely ; and it was decided by the Court, who alone could judge of it, to be immaterial.   But if immaterial, though made by the grantee, and with a fraudulent intent, yet it could not operate to divest an estate already vested.   It would be unjust to permit a grantor thus to control an estate which he had already absolutely conveyed; and it would overturn the principle of law which forbids the grantor to defeat his own deed.

   The old distinction, relating to the person making the alteration, has no solid foundation to support it.   It seems now to be settled that the alteration, if immaterial, does not affect the deed, even though made by the grantee.   The only inquiry now is, whether the alteration is essential or not; and this is plainly the doctrine of common sense.

   There is good reason for the distinction stated between contracts executory and executed.   If the party will defeat his own remedy on a contract not executed, it is his own folly; but he ought not to be suffered to infringe the rights of others.

   The estate in question vested in *Molineaux* by his title-deed from the proprietors; and had he torn off the seal, or destroyed the deed altogether, this would not revest the estate in the grantors; nor could it pass from the grantee but by deed, descent, or levy.   But the direction of the judge goes to sanction a mode of conveyance differing from either of these, and hitherto unknown in the law.

   MELLEN C. J.   The motion is that the verdict which has been given in this case for the plaintiff may be set aside and a new trial granted, on account of a misdirection of the Judge who sat in the trial of the cause.   In the opinion of the Judge, the alteration made in the deed was immaterial, as having no legal effect in its construction; but he instructed the jury that if they should believe the alteration to have been made by *Molineaux,* and *fraudulently,* it would render the deed void as to him and

his heirs. *Thorndike*, however, did not claim to hold the lands as *heir* to *Molineaux*, but as a purchaser under his administrator; but no notice seems to have been taken of this distinction in the trial of the cause. Admitting the opinion of the Judge to be correct as delivered, it would not follow that such alteration, with whatever intention made, would render the deed void as to *Thorndike*. Hence it becomes important to examine this point more closely.

As to the general effect produced by an alteration or erasure of a deed, bond, or other written instrument, the law has undergone some material changes. Ancient strictness has given place to more liberal and rational principles, and doctrines more consonant to sound common sense have gained the ascendancy.

In *Pigot's* case, 11 *Co.* 27. it was decided that an immaterial alteration made by the grantor or obligee himself, avoids the deed or bond, unless by consent of the grantor or obligor. This appears to be a leading case on this subject.

In the case of *Markham v. Gonaston, Cro. El.* 626. the Court decided that the addition of a condition to a single bond, though for the benefit of the obligor, being done by the obligee, avoided the bond.

In 1 *Shep. Abr.* 541. it is stated thus: "If a deed be altered by the party who holds it and claims under it, though in a part immaterial, it shall avoid the deed ; though the alteration be to his own disadvantage, and to the advantage of the grantor."

In *Shep. Touchstone*, 69. the doctrine of *Pigot's* case is laid down distinctly to be good law.

In the case of *O'Neal v. Long*, 4 *Cranch.* 60. it was contended by *Mason* in the argument, that the interlineation which had been made was not material ; and, being made by a third person, without the privity of the obligee, did not avoid the bond. He cited *Pigot's* case, and seemed to admit that if such alteration had been made by the obligee, it would have been fatal : and the Court seemed satisfied with the principle as thus stated.

Judge *Story*, in the case of *Cutts* plaintiff in error *v. The United States*, 1 *Gall.* 69. recognizes the principles of *Pigot's* case, as to the effect of a material and an immaterial alteration, made by an obligee.

In the case of *Smith v. Crooker & al.* 5 *Mass.* 538. Chief Jus-

Barrett *v.* Thorndike.

tice *Parsons*, in delivering the opinion of the Court also quotes *Pigot's* case as to the effect of a material alteration; and afterwards observes that " an alteration by erasure or addition made by the obligee or a stranger, which will avoid a bond, must be in some *material* part ;" and then he proceeds to shew the immateriality of the alteration which had been made in the bond in that case by the obligee, and concludes with judgment in favour of the bond.

Afterwards, in the case of *Hunt v. Adams*, 6 *Mass.* 521. the same Chief Justice observes, " as to an alteration, it is an old rule that any alteration, *whether material or not*, in an instrument, made by the party *to whom it is given*, shall avoid it, unless made by the consent of the party who executed it." Here the strictness of the old rule is evidently approved.

In the case of *Hatch v. Hatch*, 9 *Mass.* 307. Chief Justice *Sewall*, in delivering the opinion of the Court, observes,—" In executory contracts, proveable by written instruments, the remedy is sometimes lost by the loss of the evidence ; and bonds and notes which have been altered in a *material* part by the *obligee* or *payee*, are no longer proof of an obligation or contract. This rule might possibly, though I doubt it, be extended in strictness, even at the present day, to alterations wholly *immaterial*, if made at the instigation of the party entitled by the instrument, although it were done innocently, and to no injurious purpose."

Notwithstanding the changes which have taken place in the course of judicial decisions, as to the effect of tearing off a seal, and of erasures made under certain circumstances, and the mode of deciding as to this effect; still, as it regards the effect of an *immaterial* alteration, made by the *obligee* in a bond, the balance of authorities seems to be clearly in favour of the proposition that it avoids the bond, especially if made fraudulently ; although our Courts, in some instances, have expressed doubts as to the principle, and manifested an inclination to escape from its operation, whenever the facts of the case could be found to warrant it.

But however we might decide the question if it arose upon an *immaterial* alteration, made in a bond or other *contract* by the obligee or with his privity, yet we are not called upon to decide

this cause upon the principles applicable, to such a question ; as we consider the case of a *deed of land*, altered by a stranger, or even by the grantee himself, after its execution and delivery, as a case of a different nature ; and on this distinction our opinion in the present action is founded.

It was admitted in the argument, though not stated in the report, that *Molineaux* entered into possession under his deed, as well as caused it to be recorded ; and that his administrator, by virtue of a license duly obtained, sold the land for payment of debts, and that the defendant purchased it. It becomes material, then, to inquire what effect the alteration made in the deed by *Molineaux* could produce as to his *title.*

A deed made by one having good and lawful right, and duly executed, delivered, and recorded, passes the estate to the grantee ;—he becomes seized of it. If the deed be lost, or destroyed, the title is not impaired ; and the grantee might maintain an action upon it, making *profert* of a copy. *Reed v. Brookman,* 3 *D. & E.* 151. If he had destroyed the deed himself, there would seem to be no effect produced, prejudicial to the title which had vested in the grantee by virtue of the deed. Surely then an immaterial alteration in such a deed, though fraudulently made, could not, in any manner, injure the title of *Molineaux* himself. His fraudulent intent could not *reconvey* the estate to the proprietors. We know of two methods only, in which he could voluntarily divest himself of the estate which had thus vested ; viz. by *deed* of reconveyance, or by *will.* It is true, if his deed had not been recorded, he might have restored it to the *Proprietors ;* and if this were done fairly and without impairing or intending to impair the rights of third persons, the transaction might have been effectual, as between the parties, to revest the estate in the *Proprietors ;* according to the principles laid down in the case of the *Commonwealth v. Dudley,* 10 *Mass.* 403.

In the case of *Hatch v. Hatch* before cited, an alteration was made in a deed by, or in presence of the grantee ; and the question as to its effect upon the deed was under examination. The Chief Justice, speaking of the principles of law applicable to erasures and alterations in bonds and contracts, observes,—" But these rules have not the same operation where a

title to real estate is in question.    The cancelling of a deed will not divest the property, which has once vested by a transmutation of possession.    A man's title to his estate is not destroyed by the destruction of his deed.    2 *H. Bl.* 259.    10 *Co.* 92."

But in the present case, if the alteration by *Molineaux* could divest the estate, then *Thorndike,* who had no knowledge of the fraud, would suffer by it, and this without any fault on his part. But we must look to still farther consequences.    If an alteration by a grantee avoids his deed, it seems immaterial at what time the alteration is made; whether before or after he shall have sold and conveyed the estate to a third person.    To give an alteration such an effect, would subject after-purchasers to loss of title, and lead to confusion.    It would be contrary to the established principle, that a grantor cannot, by his own actions or declarations, defeat a deed which he has before made to one who is claiming and holding under it.

On the whole, we are satisfied that according to the principles of justice and sound policy, as well as to adjudged cases, the plaintiff is not entitled to retain the verdict which has been returned in his favour ; and it is therefore set aside, and a new trial granted.