Chadwick & al. *v.* Webber & al.

---

## CHADWICK & AL. *vs.* WEBBER & AL.

Where the grantor in a deed, after its execution, handed it to the grantee to be put into a trunk which contained their joint papers, they being partners in trade,— the key of which trunk was always kept by the grantor, and was returned to him as soon as the deed was deposited therein,—this was holden to be no deliv-ery of the deed.

This was a writ of entry, in which the demandants claimed five ninths of an estate formerly belonging to their ancestor, *Charles Webber*, of which estate they allege that he died seised. The tenants pleaded that the ancestor, by his four deeds duly

executed and delivered, in his life time, conveyed the premises to *Jeremiah Webber* his son, who died seised of the same, and from whom the premises descended to the tenants, his children and heirs at law. These facts were traversed, and issue taken thereon.

At the trial of this issue, before *Weston J.* the tenants produced a deed, bearing date *June 3,* 1809, in the handwriting of *Jeremiah Webber,* and purporting to be a conveyance to him from his father, *Charles Webber,* of his homestead farm, for the consideration of 4000 dollars ;—and proved that the *father* called on a Justice of the Peace with the deed, in the *absence* of the son, the *grantee,* and in presence of the Justice and of another witness, executed the deed with the usual formalities, and after the acknowledgment was certified thereon by the Justice, the grantor took the deed, and returned home.

They also proved that *Charles* and his son *Jeremiah* were partners in trade, transacting business in a store on the homestead;— that the papers and money of the firm were deposited in a trunk in the store, of which the father kept the key;—that *Jeremiah* was the active partner, who transacted most of the business of the firm, the father being in the habit of sitting in the store and keeping the keys ;—that when the son had occasion to go to the trunk for the notes of the firm, which were kept there, or to pay or deposit money, he applied to his father for the key, which was regularly returned as soon as such object was accomplished ;—that the father was tenacious of the keys, and frequently declared that he meant to hold the purse strings as long as he lived ; and that the keys were about his person when he died.

It further appeared that on the 28th day of *February* 1814, the father called one person into the store, and the son called another, to witness the execution of certain other deeds ;—that when the witnesses came into the store the father and son were together ;— that the son took up ten or twelve deeds, which were in his own handwriting, unfolded them, and laid them down for his father to sign, which he did, and acknowledged them before one of the witnesses who was a magistrate ; after which they were subscribed by the witnesses, the acknowledgements certified, and the

deeds taken up and folded by the son, and wrapped in a piece of brown paper ;—that the old gentleman then took from his pocket the key of the trunk and handed it to his son, who deposited the deeds in the trunk, locked it, and returned the key to his father. Nothing was said to the witnesses touching the contents of the deeds. They only saw that one was to *Charles Jarvis Webber* ; and they identified three others which were produced at the trial. These deeds, and the deed of *June* 3, 1809, were found in the desk of the father, after his decease ; and on the wrapper was written—" *Charles Webber's* deed to his son, not to be opened " till after his death."

There was also evidence to shew that the son lived with the father, and assisted in the management of the farm ;—that the father sometimes called the farm *Jeremiah's* ; and that he once refused to sell a part of it, without his son's consent, saying he had given him a deed. And there was other evidence adduced by the demandants, to shew that the deeds never were delivered to the grantees, but remained always under the control of the grantor ; after whose decease they were put on record.

The tenants then offered to prove the declarations of the grantor at several times, and to different persons, that he had disposed of his property by deed, and what provision he had made for his children by his first wife ; that he intended *Jeremiah* should have the residue ; and that the Judge of Probate should have nothing to do with his estate, &c.—all tending to shew that he considered his estate as finally disposed of by the deeds in evidence.

The Judge ruled that any declarations of the father, tending to shew the nature of his possession of the land which he occupied till his death, and whether he claimed the estate thus occupied in his own right, or as tenant to his son, were admissible ; but the evidence last offered, being objected to, he rejected. He also instructed the jury that the burden of proof was upon the tenants, who ought to satisfy them that the deeds were actually delivered by the grantor, in his lifetime, to the grantee, or to some other person for his use, with intent to pass the estate therein described. If this had been done, they would find for the tenants. But if they believed, from all the testimony, that the deeds never

were delivered by the grantor to the grantee with intent to pass the estate, but only for the purpose of depositing them in a place of safety as the agent of the grantor, and that this purpose was clearly expressed and made known by the grantor to the grantee, at the time, then their verdict ought to be for the demandants ; for whom they accordingly found.   And the questions upon the admissibility of the rejected evidence, and the correctness of his instructions to the jury, were reserved by the Judge for the consideration of the whole Court.

*R. Williams*, for the tenants, said that the principal question being upon the delivery of the deeds, all evidence of the intent of the grantor was admissible, including his declarations as well after as before their execution.   It was not a question between first and second purchasers, where the declarations of the grantor after making the second deed are inadmissible for another reason, as disturbing vested rights ; but the evidence offered went only to confirm and effectuate the prior acts of the grantor ; and his declarations injured no person but himself, he being the only party in adverse interest, during the period when the declarations were made.   And he commented on the evidence reported by the Judge, as shewing a sufficient delivery of the deeds ;   and cited *Bridge v. Eggleston* 14 *Mass.* 245.   *Verplank v. Sterry* 12 *Johns.* 536.   1 *Phil. Ev.* 209, 418, *note a.* 421.   *Ivat v. Finch* 1 *Taunt.* 141.   *Bartlett v. Delprat* 4 *Mass.* 702.   *Clark v. Waite* 12 *Mass.* 439. 5 *Johns.* 412.   *Wheelwright & al. v. Wheelwright* 2 *Mass.* 447.   *Hatch & al. v. Hatch & al.* 9 *Mass.* 307.   13 *Johns.* 285.

*Sprague*, for the demandants, replied that the intent of the grantor, which alone gives character to his actions, was properly left to the jury ; and by them had been conclusively settled against the tenants.   Nor could it be found otherwise ;—for it is essential to the delivery of a deed, that it be voluntarily placed out of the control of the grantor.   *Fairbanks v. Metcalf* 8 *Mass.* 230.

The declarations of the grantor, not accompanying the act of delivery, were clearly inadmissible, being at best but hearsay. And it is not a sound rule that any confessions or admissions may

be received which appear contrary to the interest of the party making them ; because the real interest of the party cannot always be apparent to the Court. On another ground also, they were properly rejected, as going to prove a transfer of real estate, which, if transferred at all, must have been by some other conveyance, the deeds read in the case being insufficient, for want of delivery. Where the grantor is a party to the suit, his declarations are not admitted to prove his own deed, but the subscribing witnesses must be called ;—*a fortiori* they cannot be received where he is not a party, and where no fraud is imputed to him, as in the case at bar. *Fox v. Reil 3 Johns.* 377. *Jackson r. Kniffen 2 Johns.* 31.

WESTON J. at the ensuing *August* term in *Oxford*, delivered the opinion of the Court, as follows.

By the general rule of law, hearsay evidence of a fact in controversy, is not admissible. To this rule there are certain well established exceptions ; as in questions of pedigree, custom, certain entries or writings, which fall within the principle of hearsay evidence, of a party charging himself, or restraining his own right thereby ; and declarations making part of the *res gesta*. So proof of the declarations of tenants in possession, as to the nature of their occupancy, and under whom they hold, when the seisin of the proprietor is in controversy, has been admitted. And generally declarations of persons not under oath, when received in evidence, are admitted as facts in themselves, from which presumptions may arise for or against the facts in question.

Upon an examination of the authorities, we do not find that the testimony rejected falls within any exception to the general rule, by which hearsay evidence is excluded. They were declarations of the ancestor, under whom both parties claim, unaccompanied by any act, of the disposition which he had made, or intended to make, of his estate.

The cases, cited by the counsel for the tenants, are all distinguishable from the case before us. *Verplank & al. v. Sterry & al.* was a case in chancery ; in which *Arden*, the party whose declarations were received in evidence, had given his answer

under oath ; and the declarations had a tendency to disprove that answer. *Ivat v. Finch,* cited from *Taunton,* related to a personal chattel ; and does not accord with the opinion of Lord *Ellenborough,* who tried the cause. In *Bartlet v. Delprat* 4 *Mass.* 702, and *Clarke v. Waite,* 12 *Mass.* 439, evidence of the declarations of the party was rejected ; nor is there to be found in these cases any *dictum,* warranting the admission of the testimony rejected in the trial of this cause. In *Bridge v. Eggleston* 14 *Mass.* 245, the deed, under which the tenant claimed, was impeached on the ground of fraud. In the case, cited from 5 *Johns.* 412, *Spencer* J. says " that the declarations of a party to a sale or transfer, going " to destroy and take away the vested rights of another, cannot, " *ex post facto,* have that consequence, nor be regarded as evi- " dence against the vendee or assignee." But he does not state that such declarations would be evidence, if made before, or if made in affirmance of such sale or transfer. The declarations received in evidence in *Doe v. Roe* 1 *Johns. Cas.* 402, were those of a tenant, while in the possession and occupancy of the land in question, stating to whom the same belonged.

A delivery of a deed may be by acts, or by words ; or by both. It may be delivered by the party, who made it ; or by any other person, by his appointment or authority precedent, or assent subsequent. It may be made, either to the grantee, or to any other person authorized by him to receive it ; or to a stranger for his use and benefit. But if a man throws a writing on a table, and the party takes it, this does not amount to a delivery, unless it be found to have been put there, with intent to be delivered to the party. *Com. Dig. Fait,* (A. 4.) And, upon the same principle, if the maker of the deed avails himself of the hand of the party for whom it is made, merely to put the deed into a trunk, desk, or other place of deposit, within the control of the maker, and such purpose is indicated and made known at the time, there is no legal delivery ; no act being done, or declaration made, expressive of an intention to deliver.

In *Wheelright v. Wheelright* 2 *Mass.* 447. *Hatch v. Hatch* 9 *Mass.* 307, and *Ruggles v. Lawson* 13 *Johns.* 285, cited by the counsel for the tenants, the actual delivery of the deeds to a third per-

son was proved; and whether originally delivered as deeds or escrows, they were under the peculiar circumstances of each of these cases, holden to be operative as deeds, from the first delivery. But the deeds in question in the present case, were never delivered to, or deposited with, a third person; nor does it appear that, during the life time of the grantor, they were ever, by his consent, placed within the control of the grantee.

We are of opinion, that the testimony rejected was not legally admissible; and that the jury were properly instructed at the trial. There must therefore be judgment on the verdict.