Carr, J.
The argument turned, principally, upon the question, whether the deed of trust of the 6th April 1804, was recorded within eight months after it was executed ? If it was, it protected the property; if not, it was void as to creditors. There is no parol evidence with respect to the deed. The question, then, is presented in its simplest and most general form, Whether, when a grantor acknowledges, in court, a deed which he had before executed in the country before witnesses, such acknowledgment is a reexecution of the deed, and makes it to all intents and purposes a new deed of the date of such acknowledgment ? My convictions tell me, that it does not, but merely furnishes evidence of a prior execution of the deed, in order that the clerk may record it.
The statute of conveyances says, “That no estate of inheritance Stc. in lands or tenements, shall be conveyed from one to another, unless the conveyance be declared by writing sealed and delivered.” The essentials of a conveyance, then, are sealing and delivery; and these are the appropriate terms to express the execution of a deed, borrowed from *554 the english law, and so long settled, and so universally understood, that wherever the law speaks of a deed or conveyanee, it means, of necessity, a writing which has been sealed and delivered. What is the legal meaning of the word ac* 'knowledged, used by the same statute, thus—“ Nor shall such conveyance be good &c. unless the same writing be acknowledged by the party, who shall have sealed and delivered it, or be proved by three witnesses to be his act &tc.?” I think we shall find, that this word, when applied to deeds, has a meaning as fixed and settled as the words sealed and delivered: that it is uniformly used to denote the recognition of a deed already sealed and delivered.
The statute of 27 Hen. 8. ch. 16. commonly called the statute of inrolments, enacts, that no manors, lands &c. shall pass, alter or change, from one to another fee. by reason only of any bargain and sale, except the same bargain and sale be made by writing indented, sealed and inrolled, in one of the king’s courts &c. the inrolment to be within six months from the date &c. The statute is silent as to the mode of proof, on which the deeds shall be inrolled : but in many of the old books, and especially in my lord Coke’s commentary on the statute, 2 Inst. 27Í-4. we see many cases shewing that the mode of proof was acknowledgment before the court. Indeed, it would seem that this at one time was considered as the only mode of proof; for in Co. Litt. 225.b it is said, “ No deed &c. can be inrolled, unless duly and lawfully acknowledged.” In this sentence, as well as in all the cases put, we see most distinctly that the deed is perfected, before acknowledgment is thought of. “Everydeed (says Coke,2Inst. 674.) shall be intended to be delivered on the same day that it bears date, unless the contrary be proved.” From the day of the date, then, it is a perfect deed; but if it be acknowledged within six months it may be inrolled. In Taylor v. Jones, 1 Salk. 389. it is laid down, that a deed may be in-rolled, without the examination of the party, upon proof by witness that the party delivered it: which shews, that at this time, the proof by witnesses began to be used, as well as the *555 acknowledgment of the party; and shews too, that these two inodes were used precisely to the same end; to furnish that proof of the prior excution of the deed, on which it might be inrolled. And in lady Anderson’s case, Ibid,, the court made a general rule, that all deeds should be acknowledged on the plea side in this court, and not on the crown side, and that the acknowledgment should be in open court. I quote these cases (and might add many more) to shew that long before our legislation on this or any other subject began, the term acknowledgment, as applied to deeds, had acquired a fixed and settled meaning, in that system of laws on which ours is founded. The earliest legislation of our own upon the subject of deeds, may be found in 1 Hen. Stat. at Large, pp. 417. 418. an act passed in 1642, another in 1652, and a third in 1656. These declare, that no person shall pass over by conveyance, or otherwise, any part of his estate whereby his creditors not having knowledge thereof might be defrauded of their just debts, unless such conveyance were first acknowledged before the governor and council, or at the monthly courts, and there registered in a book for that purpose, within six months after such alienation. In 1661, this act was repealed; 2 Id. 98. Here we see acknowledgment was made indispensable to recording. But it was an acknowledgment of an actual conveyance; a thing already perfected, and which may be acknowledged, at any time within six months after it has been thus perfected, but certainly at no time before sealing and delivery. The statute of 1705, 3 Id. 318. enacts, that the deed shall be indented, sealed, and recorded in the general court, or in the county court where the land shall lie, in manner following, that is to say, if the grantor, e‘ at the time of such making and sealing shall be resident within this colony, then the recording shall be made within eight months, from the sealing and delivery fyc. provided, always, that no such bargain and sale &c. shall, by the general or county court, be admitted to record, unless, the same be acknowledged in such court by the person making and sealing the same, to *556 be his proper act and deed, or else that proof be made of such making and sealing, upon oath, by three witnesses at the least.” This is the first of our statutes enabling a party to have his deed recorded upon proof of witnesses; and to my understanding, 'it is not possible for words to express an idea more clearly than it is here expressed, that the acknowledgment, and the proof by witnesses, are meant to effect precisely the same purpose; that is, to furnish such evidence of a prior execution of the deed, as will authorize the recording. In 1734, there was another statute pretty much in the same words; 4 Id. 398. and in 1748, there was yet another, which, after directing the manner of executing deeds, and the time of recording, adds, “ But no such deed shall be admitted to record in the general or county court, unless the same be acknowledged in such court, by the grantor in person, to be his act and deed, or else, that proof thereof be made in open court, by three witnesses at the least;” 5 Id. 408. From this time down through all the revisions to that of 1792 (under which this case arises) the same words have been used ; constantly assigning to the term acknowledgment, precisely the same fixed, uniform, unvarying meaning. And this meaning (according to my experience, and I practised long in the county courts) was perfectly understood, and universally practised upon. I never in my life saw or knew of a case, where a writing was brought into court, to be executed as a deed there, by a delivery to the clerk. They were all deeds already executed; and when the clerk asked the grantor, do you acknowledge this to be your act and deed? he answered yes, without having an idea of doing more than furnishing evidence, that at the date of the deed he had sealed and delivered it. How could he think of doing more ? he had already executed the deed, and taken witnesses to that execution : if they had attended, they could only have proved that execution : but this was not convenient, and he attends for the same purpose. The clerk does not ask him, do you deliver this as your act and deed ? but, do you acknowledge this ?
*557 Now, this word acknowledge, besides the legal sense in which it has for centuries been used, has also a common meaning, understood by every one, which uniformly relates to something past; it is a confession or admission of some prior act. When then, I see, in the case before us, a deed hearing date the 6th April 180d, sealed and delivered in presence of many witnesses, and read the clerk’s indorsement on it of April 1805, “ this deed of trust he. was this day, in open court, acknowledged by James Roane, and as to him, ordered to be recorded, and continued as to the rest,” how can I possibly conclude otherwise, than that this, like all other acknowledgments, was an admission, furnishing evidence to the clerk, that he had, on the day of its date, sealed and delivered the deed ?
It is said, that we cannot put this construction upon the statute, because as every man is bound to know the law, we must suppose he does know it; that after the lapse of eight months the recording the deed would, under the law, be a vain and useless thing; and, therefore, we must conclude, that the grantor meant to reexecute the deed. I can by no means assent to this reasoning. It is giving to the maxim, that every one is bound to know the law, a different meaning from what I have supposed was the true one. Every one is so far bound to know the law, that ignorance of it will not excuse him ; hut I have never understood, that we are justified in giving a totally different construction to an act from that which it naturally bears, because a man well acquainted with the law, would not probably have acted in that way. If Roane had really known, that the deed was void as to creditors after the eight mouths, and that a simple recording of it afterwards would not cure the defect, he would probably have acted very differently: he would have taken advice, and been informed that the only way in which he could correct the lapse, would be to reexecute the deed, by a redelivery in the country, before new witnesses.
This brings me to speak of Eppes v. Randolph, 3 Call 103. That case was highly eulogized, and the mischiefs *558 that would follow the shaking it, feelingly deplored. For myself, I can truly say, that I do not mean, in this case, to stir a single pebble of Eppes v. Randolph: but I think I can shew, that it is not exactly the case it was represented to be, and that it is most materially’ different from the case at bar. That was the case of a deed redelivered in the country, before a set of witnesses different from the first; and the whole argument, as to this part of the case, turned upon the effect of such reexecution, and not at all upon the effect of an acknowledgment of the deed in court by the grantor. I assert this after a careful perusal of the case; and I think I shall shew it by some extracts from the arguments at the bar, and the opinion of the court. Mr. Call and Mr. Marshall both argued, most elaborately, to prove that there may be a redelivery of the same deed; but observe the particular ground, on which they place this reexecution, as to the facts—Mr. Call says, “ But it will be said, this was not a new deed, but a mere re-acknowledgment of the old one, which, according to the chancellor’s reasoning, can mean nothing more than an acknowledgment, that it was delivered the day of its first date. This position is never true; because when it is reacknowledged, the grantor repeats the eeremony, and says in the presence of the witnesses, that he acknowledges it to be his seal, and delivers it as his act and deed. So that it is in fact, always, an act of the day of its reacknowledgment. But, however true the position may be in general, it is certainly not so, in this particular case: because the grantor here, has actually caused the real date of the reacknowledgment to be noted by the witnesses, thereby manifesting his design that it should be considered an act of that day.” Now, I ask, do the facts here stated, and the arguments drawn from them, apply in the slightest degree, to a simple acknowledgment in court, in order to have the deed recorded ? Assuredly not. See, then, a few remarks of Mr. Marshall: “ It is said, however, that the reacknowledgment was no delivery. But for what purpose was it made then? Certainly, the intention was to deliver; *559 and here the evidence is express, that it was delivered on the date of the last acknowledgment.” Here, again, is a case stated wholly different from the one at bar. Let us turn now to the opinion of the court; and here, I must admit, that the criticism of the counsel on my construction of the judge’s opinion (as given in Rootes v. Holliday, 6 Munf. 258.) is just; I did mistake his meaning, when I supposed that he considered an acknowledgment in court, a reexecution : he does not put the case on that ground ; and, in truth, he had no reason for doing so, for there was in that case no acknowledgment in court. He says, “ The term reacknoivledgment seems to have produced in the mind of the chancellor, mistaken ideas. He understands it as meaning no more, than that Richard the father, on the 21st March, acknowledged that he had on the 20th September before, sealed and delivered that deed : a mistake, which information from one clerk would correct. It would be, that when a man comes into court to acknowledge a deed, the question put to him is, not whether he delivered the deed at the date, but whether he then acknowledges the indenture to be his act and deed ? So the oath of the witnesses is, that they saw the bargainor seal and deliver the paper as his act and deed. Such was the oath administered to Curry and the other witnesses to this deed. When did they see it sealed and delivered!? JYot on the 20th September 1785 (for then they were not present, and other witnesses attested that redelivery) but on 21st March, when they subscribed it, noting upon the paper, the day of the delivery which they attested.” Is it not seen at a glance, how vastly different a case this is, as stated by the court, from a mere acknowledgment of the deed by the bargainor, in court? Observe some further remarks of the judge: he says, “ It is admitted by the chancellor, that if this deed had been cancelled, and a new one made, it would have been good. This the counsel also admit ; but pursuing the chancellor’s idea, they have produced a number of cases, some stating that between the date and the recording, the estate is in the bargainor; others, that it *560 is in the bargainee; and others still, that it is in suspense, Leaving it to others to reconcile this clashing jargon, we consider what would be the opinion of a plain man on the occasion. It would be, that the estate was in the bargainee, while he held the deed, which was the evidence of it; but when he surrendered that deed to the bargainor, his legal title ceased, and the other was at liberty to convey it to him or any other; and if to him, might either destroy that deed, and make a new one, or by a reexecution of the same paper, give it force as a new deed from that period.” Here we see the court considers, that by the bargainee’s surrendering the deed to the bargainor, in that case he divested himself of his title, and the other was at liberty to convey to him or another. If our case is dike that, and an acknowledgment in court is equal to a reexecution before witnesses, whenever a grantor takes the deed, to make his acknowledgment before the court, he revests himself with the legal title, and may grant to another. Would not this notion, once countenanced by this tribunal, make wild work in the country? The„court thought such the effect, where both grantee and grantor (as in Eppes v. Randolph) concurred in the reexecution of the deed; but would that enlightened tribunal •have given the same effect to the every day occurrence of ■the grantor’s acknowledging the deed in court? Assuredly not. It must, therefore, have thought with me, that the case before them was very different from the present, and gave no countenance to the attempt now made.
The case of Colquhoun v. Atkinsons, 6 Munf. 550. was also relied on; but, besides that the reexecution there, was also in the country, and the recording subsequent to it, the question was never raised; and not only so, but could Dot have been raised, for the bill instead of impeaching this deed, claimed in subordination to it.
The case of Moore v. The Auditor, 3 Hen. & Munf. 232. was a case of recording upon the acknowledgment of the grantor; and yet the court decided, that the deed was not recorded within eight months.
*561 Upon the whole, I am most strongly opposed to the decision which will be made in this case, and cannot but consider that it will be very mischievous. I am for affirming the , decree.
Tucker, P. The argument of the main question in this case, having turned very much upon the effect of the second acknowledgment of the deed, it is proper first to ascertain what are the received doctrines of the law as to a second delivery.
The old common law writers tell us, that “ a deed cannot have and take effect, at every delivery, as a deed; for if th,e first delivery take effect, the second delivery is void.” Perkins ^ 154. Cowp. 203. So far as this principle applies to the cases put of an infant or a man in prison, it may be admitted to be both reasonable and unquestionable. But it would be unreasonable to extend it to a case, where at the time of the second delivery, there were rights in the grantor to any intent, which had not been passed out of him by the first delivery. Thus, if A. bargain and sell to B. in fee, when A. having only an estate for life, this estate only passes. But if the fee afterwards comes to A. by descent or purchase, a second acknowledgment of the deed would operate upon the inheritable portion of the esate, which had not been passed by the first delivery. And so, in the case of Eppes v. Randolph, it was argued, in relation to the second delivery of a deed in order to have it recorded, that the estate, until recording, remained in the grantor, as to creditors and purchasers, and therefore, the second delivery did operate; and that, if nothing passed against creditors and purchasers by the first delivery, then there was an interest to pass by the reacknowledgment; namely, that portion of the estate which remained in him for the benefit of creditors and purchasers; 2 Call 151. These, and various other able arguments upon this difficult subject, were duly considered in that case, and resulted in the decision, that the second delivery was valid and effectual, to the in *562 tent of making it the point of time from which the eight months were to be computed, within which the deed was to be admitted to record. The deed, there, was dated the 20th September 1785. At that date, it had been sealed and delivered before one set of witnesses. It was reacknowledged before another set of witnesses on the 21st March 1786, and was recorded the 3d July 1786, nearly ten months after the first delivery, but less than four months from the last delivery. If the last delivery was void, then the record of the deed was too late. If the last delivery was valid, then the record of the deed was in good time. The court decided, that the deed was duly recorded, distinctly affirming that the second delivery was effectual. “Upon the whole” said president Pendleton, “ we are of opinion, that the deed is to be considered, to every intent and purpose, as a deed of the 21st March 1786, and not before ; that it was therefore recorded in due time ;” 2 Call 185.
It would be difficult to conceive otherwise of the design of the legislature in the statute of conveyances, than as the court seems in this case to have considered it. The statute contemplated a variety of steps in the completion of a conveyance under its provisions. It required it to be executed before witnesses and proved by them within a given time, or to be acknowledged by the party in court. Until this was done the effect of the conveyance was imperfect. It bound the grantor, indeed, to some intents, but, unless recorded, it left in him almost as much power over the estate as he had before. His conveyance to a subsequent purchaser, without notice, would pass even the legal title to him ; Newman v. Chapman, 2 Rand. 93. and a judgement in favor of a precedent or subsequent creditor, with or without notice, would deprive the vendee of the estate; Guerrant v. Anderson, 2 Rand. 208. Did the statute design, that, if by accidental sickness or removal of witnesses, and the death or faithlessness of the vendor, the deed should not be admitted to record in time, the case should be without *563 remedy ? Did it design, that the original vice of the omission to record the deed, should be so inherent that nothing should purge it ? If it did not, what is the remedy ? There is none more obvious, more simple, and more consistent with the law, than that which the court has sanctioned in Eppes v. Randolph; the redelivery of the deed for passing out of the grantor the dangerous power left in him, of conveying away the legal title to a third person, or of subjecting it to the debts which he might contract or had contracted. A surrender of the conveyance by the grantee to the grantor, would not revest the title in the grantor so that he might make a new deed; for since the statute of frauds (I speak of the english statute, herein nearly equivalent to our statute of conveyances) has required all conveyances of freehold estates to be by deed, nothing seems to be better settled, than that cancelling or delivering back the deed to the grantor, does not revest the title; 4 Cruise 497. Doe v. Bingham, 4 Barn. & Ald. 672. 6 Eng. C. L. R. 560. Roe v. Archbishop of York, 6 East 86. Bolton v. Bishop of Carlisle, 2 H. Blacks. 263. So that a conveyance would have nothing to operate upon, except that latent power in the grantor of which I have spoken. And even if the grantee reconveyed to the grantor, of purpose, in that way, to take back a second conveyance, still the original vice would infect the chain of tide. It would subject the estate to the claims of creditors anteriour to the first deed, and, perhaps, also to subsequent purchasers without notice. Surely, the legislature could not have intended that the omission should be without remedy; and if there be a remedy, that which has been adopted, and which has proceeded upon the principle of the second delivery being valid, is the best that can bo devised, and as little liable to technical objection as any other.
It is obvious, indeed, that unless we construe the statute as requiring all the witnesses to be present together, and to witness the same act of delivery, there must of necessity be several deliveries; and yet each of these deliveries is neces *564 sary to make a complete deed, which may be recorded and divest the grantor of all power over the estate. We must, therefore, take it, that the strict technical doctrine, which pronounces a second delivery to be ineffectual, can have no application to this question.
We are relieved, however, from the responsibility of settling this matter by the case of Eppes v. Randolph, which settled it more than thirty-three years ago. No case has come down to us with stronger sanctions than this celebrated case. It has been reported with a degree of care and labour, by one of the able counsel in the cause, and under the eye of his adversaries and the court, which forbids a doubt of its fidelity. ■ It was argued with distinguished ability and zeal, by the most learned and sagacious counsel who ever aided the labours of our predecessors, and before a court over which a judge presided whose learning and wisdom have known no rival in our judicial history. The very question was debated, and the very arguments laboriously presented, and deliberately considered, which have been delivered on this occasion. It was a question interwoven with the titles of the country, and therefore vitally interesting. The decision was to settle the law of conveyancing, and was therefore of the utmost importance. And it has, for thirty-three years, been the received and undisputed law of the land, and counsel have accordingly advised, and titles have been made under the sanction of its authority. Moreover, it has never been impugned by t'bis court. In the case of Moore v. The Auditor, 3 Hen. & Munf. 232. it was not even mentioned, and in Rootes v. Holliday, though the decree was affirmed, yet it by no means appears, that it was upon any principle inconsistent with Eppes v. Randolph. Nor, indeed, did the chancellor, in his able opinion, overruling the sophism which attempted to apply the principle of Eppes v. Randolph to the case of Rootes v. Holliday, undertake to question the decision that the deed took effect by its secopd delivery before witnesses, though he criticised a part of the language which had been used by president *565 Pendleton. The case then stands unassailed, and is moreover supported by the decision in Colquhoun v. Atkinsons, 6 Munf. 550. which, on one point, was exactly like it. In that case, the deed of trust to Atkinson, was dated the 9th November 1804. It was not recorded till 16th December 1805, thirteen months after; but it was reacknowledged on the 9th July 1805, about five months before the recording; and its validity was not called in question. There, however, as in Moore v. The Auditor, the question was not discussed ; and, in this regard, they may be fairly placed in the balance against each other; except that Colquhoun v. Atkinsons, being last in point of date, is entitled, for that reason, to most consideration. •
Taking Eppes and Randolph, then, as law, it establishes these positions: That though a deed has been sealed and delivered before witnesses, yet a subsequent sealing and delivery before new witnesses, is not void, but is effectual to the intent of making that delivery the date from whence the eight months are to be computed ; or, in other words, that the second delivery, before new witnesses, is to be taken as a reexecution of that date, so as to make the recording within eight months thereafter, a recording within due time; that this acknowledgment before new witnesses, is so intirely a new execution, that the deed is to be considered, to every intent and purpose, as a deed of that date, and of course it is not to be considered or interpreted as a mere acknowledgment of the first execution and delivery.
Hence, it seems clear, that if the deed from Roane to the trustees, had been reacknowledged before witnesses in April 1805, instead of having been acknowledged in court, such reacknowledgment would have made it a deed as of that date, and the recording would have been in due time. The question, then, is reduced to this point: Can the acknowledgment in court he considered, in this case, equivalent to the reacknowledgment before witnesses ?
That the acknowledgment of a deed before, witnesses, is sufficient evidence of delivery, would seem, perhaps, in- *566 Terrible from the ease of Currie v. Donald, 2 Wash. 58. That such an acknowledgment before a court, followed by a deposite of the deed with the clerk to be recorded, is a sufficient delivery, although the deed was never actually delivered to the bargainee, provided he afterwards assented to it, is not a question now open to be examined. It was expressly decided in the case of The Commonwealth v. Selden, 5 Munf. 160. Indeed, no particular form or ceremony is necessary to make a good delivery. It is sufficient if the grantor testifies his intention to deliver or put the deed into the possession of the other party; Phil. Law Ev. [418.]* And, therefore, a delivery to a third person for the use of the grantee, and without his knowledge, becomes a valid delivery by his subsequent assent, and relates back to the original delivery. Hatch v. Hatch, 9 Mass. Rep. 307. Ruggles v. Ruggles, 13 Johns. Rep. 285. Indeed, there are many cases which shew that a deed, though never parted with, by the person who executed it, may yet operate as a deed, where it has been signed, sealed and acknowledged : as where a grantor signed a deed (which was ready sealed) in the presence of his niece, the grantee not being present, saying “ I deliver this as my act and deed;” and as soon as she attested it, took it into his own possession and carried it away; it was resolved to be a good delivery: Doe v. Knight, 5 Barn. &t Cress. 671. 12 Eng. C. L. R. 351. In that case, Bayley, J. cites many cases to the same point. In the same case, the principle was also settled, that the delivery to a third person for the use of the grantee, where the grantor parts with all control over the deed, makes the deed effectual from the instant of delivery. For, about a month after the execution above mentioned, the grantor delivered a bundle of papers to his niece, among which was the deed in question, saying “Here, keep this; it belongs to Mr. Garnons,” the grantee. This was held good, and the opinion was sustained by many authorities, and among others by Shepherd (Touchstone 57.) who is particularly *567 strict as to the requisition of delivery. Mr. justice Bayley cites also 2 Roll. Abr. K. 24. pl. 7. Taw v. Bury, Dyer 167. 1 Anders. 4. Alford v. Lea, 2 Leon. 111. Cro. Eliz. 54. Butler and Baker’s case, 3 Co. 26. 27. which go indeed to shew, that a deed delivered by the grantor to a third person for the use of the grantee, is a good deed, even before it is delivered over to or accepted by the grantee.
This doctrine has a very strong application to the acknowledgment of a deed in court, or before the clerk, in order to its being recorded. That acknowledgment is stated by president Pendleton, 2 Call 184. to be an acknowledgment, that the instrument is the act and deed of the party, and it is folknved by a delivery to the officer of the court for the purpose of being recorded. Here, then, is a delivery to a third person. For whose use? for the use of the grantee. With what intent ? with intent to perfect the instrument by recording. To whom to be afterwards delivered ? to the grantee only, to whom alone the officer of the court would be justified in delivering it. It brings the case, then, completely within the principle, that where the grantor has parted with all control over the deed, the delivery is complete, though it be made to a third person.
That the acknowledgment of a deed before the court, will have the effect of a delivery, where there has been no previous deliver}7, would not, I think, be denied. Since the statute allowing the acknowledgment of deeds before the clerk, the sealing and delivery in presence of witnesses, has become more rare than formerly. It is more convenient for the parties to go to the clerk’s office, than to take the witnesses there ; and a very large proportion of the conveyances of the country are now executed without the intervention of witnesses. Titles would be shaken throughout the commonwealth, if such transactions were now to be assailed ; and the case of The Commonwealth v. Selden has, therefore, wisely confirmed them.
Confining ourselves to the proofs in this cause, we need, perhaps, go no farther; for there is no evidence here of any *568 delivery before witnesses, or of any other delivery than that which is evinced by the acknowledgment in court.
But I do not think it necessary to rest the case on this defect in the proofs. Admitting (what I doubt not was the fact) that there had been a delivery before witnesses at the date of the deed, the 6th April 1804, I think the acknowledgment in 1805, amounted to a new delivery, and not merely to the acknowledgment of a previous delivery.
As the act of acknowledgment may have this operation, where such is the design of the parties, it remains to inquire, what construction shall be given to the act, when it is doné after the expiration of the time limited for recording. Two constructions offer themselves: one which will give some effect to the act; the other which will leave it without effect: one which will effectuate the intent of the parties; the other, which will defeat it: one which will authorize the recording of the deed; the other, which will render that recording nugatory: one which will give effect to the conveyance; the other which will avoid it. There can be no hesitation in choosing that which will sustain the transaction, and give effect to the fair and honest intentions of the parties. When a deed has run out of date, and is then reacknowledged and delivered before witnesses, or before the court, for the express purpose of curing the defect, I infer, that it is to every intent a new execution, and not a mere acknowledgment of a former execution which is out of date. And in this inference, I think myself supported by the principles of the law, as applied to the acts of the parties.
On the second point in the case, I am of opinion, that according to Scott v. Gibbon, 5 Munf. 86. the joint interest of Roane and his wife cannot be touched by the creditors of Roane. But I do not perceive that the reversionary interest for the life of James Roane himself is protected by the conveyance. For though it is a contingent interest, and therefore not such a trust as may under our statute be taken in execution, yet, in equity, it is certainly responsible to the creditor. Upon reversing the decree, therefore, I would not *569 be understood to direct that the injunction should be perpetuated in toto, without reserving to the creditor the right to institute any proper proceeding for the purpose of securing to himself the benefit of this interest of James Roane, whatever may be its value.
Cabell and Brooke, J. concurred in the opinion of the president.
Decree reversed, and cause remanded to the court of chancery, with directions to reinstate the injunction, without prejudice to the right of the appellee to institute any proceedings, for the purpose of subjecting to the payment of bis defat, James Roane’s contingent interest for life, in remainder, after the death of his wife.

 New York edition of 1820.