## ADDISON CHESSMAN *versus* JAMES WHITTEMORE.

Where the title to real estate under a deed, has once vested in the grantee, by transmutation of possession, it will not be divested or invalidated by a subsequent material alteration of the deed.

WRIT of entry.   Trial before *Shaw* C. J.

The demandant produced in evidence a deed of the demanded premises to him from Asa Hunt junior, dated June 14th, 1837, and registered June 21st, and an office copy of a deed of the same premises, made to Asa Hunt junior by Asa Hunt senior, dated May 17th, 1838, and registered January 19th, 1839 ; and it was proved, that Asa Hunt junior had, prior to his conveyance to the demandant, bargained with Asa Hunt senior for the premises and had taken his bond for the conveyance thereof.

The demandant also produced in evidence an office copy of a deed to Asa Hunt senior from Enoch Hunt, dated March 15th, 1832, and acknowledged April 11th, 1832, and registered January 23d, 1839 ; and it appeared, that Asa Hunt senior, upon the execution of such deed, took possession of the demanded premises, and held them until the conveyance of Asa Hunt junior to the demandant.

Chessman
v.
Whitte-
more.

The tenant claimed title to the premises under the extent of an execution in his favor against Enoch Hunt, made on the 22d of May, 1838 ; and it appeared by the return of the officer, a deputy sheriff, on the original writ, that he attached all the real estate of Enoch Hunt within his precinct, (without giving any more particular description thereof,) on the 23d of January, 1838.

The tenant offered in evidence a letter addressed to him by the register of deeds of this county, dated May 11th, 1838, certifying, that he had examined the registry of deeds, and had found on record a deed from Enoch Hunt junior to Asa Hunt junior, including the demanded premises, but could find no other deed relating thereto.   The tenant also produced the original deed from Enoch Hunt to Asa Hunt senior, convey-ing the premises, and proved that Asa Hunt junior had, in January 1838, instead of taking a deed from Asa Hunt sen-ior, added the word *junior*, to the names of Enoch Hunt and Asa Hunt, in the deed from Enoch Hunt to Asa Hunt senior ; that the deed was first recorded in this form, on January 25th, 1838, and again, in the same form, on February 24th, 1838, so that it appeared on the record as a deed from Enoch Hunt junior to Asa Hunt junior ; that Asa Hunt junior afterwards erased the word *junior*, from the names of Enoch Hunt and Asa Hunt, and the deed was once more recorded on January 23d, 1839, as a deed from Enoch Hunt to Asa Hunt senior. No new acknowledgment was made after April 11th, 1832.

It also appeared, that the tenant, a day or two after he re-ceived the letter from the register of deeds, said that he knew, and, as one witness expressed it, knew or thought that Asa Hunt senior owned the land, but that he could not hold it, as his deed was not on record.

There was no person of the name of Enoch Hunt junior, known to the parties in this action ; and it was admitted, that Enoch Hunt formerly owned the demanded premises.

A verdict was taken for the tenant by consent, subject to the opinion of the Court upon these facts.

*Oct. 31st.*

*Leland* and *Kingsbury*, for the demandant, cited *Barrett* v. *Thorndike*, 1 Greenleaf, 73 ; *Read* v. *Brookman* 3 T. R. 151 ; *Hatch* v. *Hatch*, 9 Mass. R. 3C7 ; *Holbrook* v. *Tirrell*,

9 Pick. 105 ; *Lewis* v. *Payn*, 8 Cowen, 71 ; *Withers* v. *At-kinson*, 1 Watts, 236 ; *Jackson* v. *Gould*, 7 Wend. 364 ; *Morse* v. *Child*, 6 New Hamp. R 521.

*Metcalf* and *Breck*, for the tenant.

Morton J. delivered the opinion of the Court. The deed of Enoch Hunt to Asa Hunt was undoubtedly valid at its execution, and vested the estate in the latter. This conveyance, not only between the parties, but against all who had notice of it, was as effectual as if the deed had been recorded. The evidence that the tenant had such notice, is clear and abundant. This indeed is scarcely disputed by his counsel. See *Jackson* v. *Elston*, 12 Johns. R. 452 ; *Priest* v. *Rice*, 1 Pick. 164 ; *Mc.Mechan* v. *Griffing*, 3 Pick. 155. The subsequent alterations of the deed, by Asa Hunt junior, even if material and fraudulent, would not invalidate the title acquired under it. The deed was executed, delivered and acknowledged, in one form only. In the various mutations to which it was subjected, it never became the deed of the grantor to any other person than the original grantee. It finally resumed the form in which it was first written and was thus recorded. This made the title of Asa Hunt, which before was valid against the tenant and others having notice of it, good as to all the world.

The law in relation to the alteration of deeds and other written instruments is settled. And although it has relaxed from its ancient rigor and strictness, yet it is now well known, that a material alteration of an instrument, whether under seal or not, by a party to it, in name or in interest, invalidates it. Formerly it was holden, that an immaterial alteration by a party or a material one by a stranger, was fatal. But these principles were found to be inconsistent with reason and justice, and have been expunged from the law. *Dyer*, 262 ; Shep. Touch. 69 ; Com. Dig. *Fait, F* 1 ; *Pigot's case*, 11 Coke, 27 ; *Jackson* v. *Mulin*, 15 Johns. R. 297 ; *Rees* v. *Overbaugh*, 6 Cowen, 746 ; *Smith* v. *Crocker*, 5 Mass. R. 538 ; *Hunt* v *Adams*, 6 Mass. R. 519 ; *Hatch* v. *Hatch*, 9 Mass. R. 307.

There is a manifest distinction between executory contracts and conveyances of property. When deeds of conveyance of

real, or bills of sale of personal property, are completed and possession delivered under them, so far as the change of ownership depends on them they are executed, and the property passes and vests in the grantee. The instruments may become invalid, so that no action can be maintained upon the covenants contained in them, and yet the titles which have been acquired under them, remain unaffected. When a person has become the legal owner of real estate, he cannot transfer it or part with his title, except in some of the forms prescribed by law. The grantee may destroy his deed, but not his estate. He may deprive himself of his remedies upon the covenants, but not of his right to hold the property. This distinction has existed from the earliest times. See Viner's Abr. *Fait*, X. 2. It has always been holden, that even the cancellation of a deed will not divest the grantee of his estate under it. Co. Lit. 225 *b*, note 136 ; *Clavering* v. *Clavering*, Prec. Chan. 235 ; *Miller* v. *Manwaring*, Cro. Jac. 399 ; *Bolton* v. *The Bishop of Carlisle*, 2 H. Bl. 263 ; *Harrison* v. *Owen*, 1 Atk. 520. This doctrine has been explicitly recognized and confirmed in this country, and in our own courts. *Jackson* v. *Chase*, 2 Johns. R. 87 ; *Lewis* v. *Payn*, 8 Cowen, 75 ; *Jackson* v. *Gould*, 7 Wendell, 364 ; *Botsford* v. *Morehouse*, 4 Connect. R. 550 ; *Gilbert* v. *Buckley*, 5 Connect. R. 262 ; *Marshall* v. *Fisk*, 6 Mass. R. 32 ; *Hatch* v. *Hatch*, 9 Mass. R. 307 ; *Holbrook* v. *Tirrel*, 9 Pick. 105. Many of these cases seem to be directly in point.

Asa Hunt having acquired from Enoch Hunt a good title to the demanded premises, he conveyed them to Asa Hunt junior, who conveyed them to the demandant. This completed the chain of his title. But Enoch having conveyed all his estate, nothing remained for the tenant's attachment and levy to operate upon; and he therefore could acquire nothing by them.

*Verdict set aside, and tenant defaulted.*