## Case No. 10,983.

### In re PERKINS et al.

{6 Biss. 185;[1] 10 N. B. R. 529; 7 Chi. Leg. News. 9; 10 Alb. Law J. 247; 20 Int. Rev. Rec. 135; 1 Cent. Law J. 507; 22 Pittsb. Leg. J. 43.}

District Court, W. D. Wisconsin. Sept. 26, 1874.

BANKRUPTCY — DISCHARGE — CLASSIFICATION OF DEBTS—DATE OF CONTRACTION—PRINCIPAL AND SURETY.

1. [18 Stat. 178, June 22, 1874.] In cases commenced before above date both voluntary and involuntary bankrupts may be discharged without reference to the amount of their assets, or the number of creditors assenting.

[Cited in brief in Re Watson, Case No. 17,273. Cited in Re Montgomery, Id. 9,732.]

2. A renewal note is but an evidence of the debt, and the bankrupt should be allowed to show when it originated; and if before January 1, 1869, it should be classed as a debt contracted before that date.

3. Liability of principal to surety must be considered as having been contracted when the instrument was signed, not when the surety made payment.

[Cited in Post v. Losey, 111 Ind. 80, 12 N. E. 121.]

In bankruptcy.

Orton, Keyes & Chynoweth, for creditors.
Cassoday & Carpenter and Geo. B. Smith, for bankrupts.

HOPKINS, District Judge. The above-named bankrupts, who were adjudged such, on their own petition, in March, 1873, in January last filed a petition for their discharge. Parker & Stone, two of their creditors, opposed it, on the ground: 1st, that their assets did not amount to 50 per cent. of their debts; and, 2d, that they had not the assent of a sufficient number of their creditors. These objections, although filed before the recent amendments, were not brought to a hearing until after, and, as a matter of course, the first question which arose was as to the effect of those amendments. The counsel for the creditors claimed that the amendments applied, and had changed the prior conditions upon which a discharge might be granted, and maintained that under section 9 of the act of June 22, 1874 (18 Stat. 180), these bankrupts, as these proceedings were voluntary, could not be discharged unless their assets were equal to 30 per cent. of their debts, or the prescribed number of their creditors had filed their consent thereto; that the other exceptions in section 33 of the original act [of 1867 (14 Stat. 533)], as amended, were repealed, and that it was now immaterial when the debts were contracted; that no discharge could now be granted unless the assets equaled 30 per cent. of all debts.

These various positions were controverted by the bankrupts' counsel. So it becomes necessary, first, to determine whether the provisions of section 9 of the act of 1874, apply to cases pending, where an adjudication had been made before that act passed. On this question I am assisted by the opinion of Judge Blatchford in Re Francke [Case No. 5,046]. In that case he holds that this section (9) is prospective only, that its provisions do not apply to pending cases, and that the provisions upon the same subject in the prior acts are not repealed by section 21 of the act of 1874, as to pending cases, because (he says) the provisions of section 9, have reference only to cases commenced after the passage of the act of 1874.

The conclusion that section 21 does not repeal the prior statutes as to pending cases is incontrovertible, provided section 9 does not apply to such cases, for there would be no inconsistency between the acts unless they both applied to the same case or cases. So when it is settled that the last act refers only to future cases, it follows as a necessary sequence that the former acts are not repealed as to pending cases. I fully concur with the learned judge in his interpretation of the amended act, and agree with him that the provisions of the 9th section apply only to cases commenced after its passage. His views are in accord with those I expressed in Hamlin v. Pettibone [Case No. 5,995], in construing another provision of the act of 1874. I held in that case that section 11 applied to cases commenced after the passage of the act, and was not intended to apply to cases pending when passed, so as to make contracts valid that were void by the terms of the prior statutes (Hackley v. Sprague, 10 Wend. 113; Morton v. Rutherford, 18 Wis. 295, 298 [2 Wis. 237][2]), and that the repealing clause in section 21 was inoperative, except as to cases where the provisions of the amended act applied, and that as those provisions, then under consideration, did not apply to pending cases, the prior statutes were in force and unaffected by the repealing clause of the amended act.

The learned judge, in his opinion, referred to section 17, not noticed by me, as bearing upon the question as to what cases congress intended the provisions of the amended act to affect. In that section it is enacted that "its provisions shall apply to cases of bankruptcy now pending or to be hereafter pending," from which, as well as from sections 10 to 12, it is fair to infer that the general provisions of the act were not intended to apply to pending cases. The general rule is that statutes are to have a prospective operation. In Harvey v. Tyler, 2 Wall. [69 U. S.] 328, it is said that "it is a rule of construction that all statutes are to be considered prospective, unless the language is expressly to the contrary, or there is a necessary implication to that effect." And in U. S. v. Heth, 3 Cranch [7 U. S.] 399, 413, that "words in a statute ought not to have a retrospective

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [From 10 N. B. R. 529.]

operation, unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied." Sohn v. Waterson, 17 Wall. [84 U. S.] 596. The act of 1874, construed according to these rules, must be held to apply to future cases except when otherwise provided.

If this were all there was of the 9th section I should hold that the provisions of the prior law in reference to the conditions upon which a discharge could be granted were still in force. This section, in the first place, provides, that in involuntary cases the provisions of the original act, and of the amendments and supplements thereto, requiring the payment of any proportion of the debts by the bankrupt as a condition of his discharge, shall not apply; but that he may be discharged the same as if he had paid the required amount or had procured the consent of the requisite number of his creditors thereto.

But these provisions, according to our construction, only apply to cases commenced after the passage of the act, and do not authorize a court to order a discharge in pending cases without a compliance with the provisions of the prior statutes.

The next provision of the section (9) applies to voluntary cases, and reduces the value of assets from 50 to 30 per cent. and the proportion of creditors from one-half to one-fourth, to entitle a party to a discharge.

But this provision, like the preceding one, only applies to future cases, and does not affect the law as to existing cases.

If this were all there was of the section I should have no hesitancy in holding that the power of the court in granting discharges in pending cases was not changed. But it is not all. After prescribing these new conditions as to future cases, it reads: "And the provision in section 33 of said act of March 2, 1867, requiring fifty per centum of such assets, is hereby repealed." This cannot be treated as mere tautology. It must have some significance. It is true that section 33 had been amended by the act of July 27, 1868 (15 Stat. 227; Rev. St. 1874, § 5112), by inserting among other things, in lieu of the word "pay," the words "equal to," but the 50 per cent. clause was retained.

The same section was further amended by the act of July 14, 1870 (16 Stat. 276; Rev. St. 1874, § 5112), by declaring that the second clause of section 33 of the act of 1867, as amended by the act of 1868, should not apply to debts contracted prior to the first day of January, 1869.

Now, it seems to me that the obvious intention of this repealing clause in section 9 was to repeal the existing law requiring assets of the value of 50 per cent. of debts as a condition of obtaining a discharge. Unless this was the intention of congress, the clause is destitute of meaning or operation. It is an express repeal of the provision of what was evidently supposed by congress to be the law.

It is different from the repealing clause in section 21, which depends wholly upon repugnancy. Judge Blatchford construed it as only repealing the section as originally passed, leaving the act of 1868 amending it in force. I think such construction too strict, and as not carrying out the palpable intention of congress. It virtually nullifies the whole effect of the clause.

Technically, the 33d section of the act of 1867, in such respects as it has been changed by the amendatory act of 1868, had been repealed, so that unless the clause can be construed as embracing not only the original section and its amendments, or the "section as amended," as it is spoken of in the act of July 14, 1870, it really has no significance or operation.

It was unnecessary to insert such a clause for the purpose of giving effect to the 30 per cent. clause which preceded it, for, that being inconsistent with the 50 per cent. clause in the prior statutes, was repealed by implication, so that unless it repealed the 50 per cent. requirement in the prior acts, I do not see that any effect can be given to it, which is contrary to all rules governing the construction of statutes. It is uniformly held to be the duty of courts to so construe a statute as to give effect to every part and clause if possible, and in this case effect can only be given to this clause, by holding that the repeal covers the 50 per cent. clause in the original section, and the amendments of 1868.

I am, therefore, constrained to differ with the learned judge upon the meaning of this repealing clause, and must hold that the repeal of the provision "requiring 50 per centum of such assets," applies to the amendatory act of 1868, as well as to the act of 1867.

The changes made by the act of 1874 are clearly in the interest of the debtor, and may be regarded as a disapproval by congress of the energetic provisions of the original act as to him, and as expressive of its intention to relieve him of many of its requirements, among which the conditions imposed upon his obtaining a discharge were perhaps the most embarrassing. Having been often needlessly thrown into bankruptcy and ruined in business, it was not unnatural to increase the facilities for his discharge, by authorizing the court to order a discharge without reference to the amount of his assets in cases theretofore commenced. As the creditor had previously possessed great facilities for proceeding against him, it is apparent that congress meant to give him increased facilities to obtain his rights—a discharge. This seems to be the spirit and meaning of the act of 1874, and I therefore hold that parties in both voluntary and involuntary cases, commenced before the 22d of June, 1874, may be discharged without reference to the question of the amount of assets. or the number of creditors assenting, provided they comply with the law in other respects.

But if I am wrong in this view, there is an-

other answer to the objections interposed. If the statutes of 1868 and 1870 are in force, they do not include debts contracted before the first day of January, 1869. The claims proved up by the creditors opposing the discharge, are upon notes dated since that time, but the evidence, on the hearing, shows that they were given in renewal of notes given for a debt contracted before the first day of January, 1869. Now, when was the debt contracted? when the renewal notes were given, or when the liability was incurred? Notes are but the evidence of a debt, and the holder may surrender them and recover on the original consideration at his option. They are presumptively but an extension of the time of payment. Cole v. Sackett, 1 Hill, 516; The Kimball, 3 Wall. [70 U. S.] 37. The relation of debtor and creditor is considered for remedial purposes as having existed from the origin of the liability, and on application for a discharge, a bankrupt should be allowed to show when the debt originated or was contracted, and if before the 1st of January, 1869, I do not think a note given after that time would bring it within the category of a debt contracted after that date. But it is insisted that this is not a complete answer to the objection, as the opposing creditors Parker & Stone were sureties for the bankrupts upon the notes, and have paid them, and proved their claims as sureties thereon. This is so, but the evidence shows also that they were sureties upon the original notes given before the 1st of January, 1869. The proof also shows that they did not pay until after January, 1869, and that they have proved their claim as of the date of payment, and they insist that as between them and the bankrupts the debt must be considered as contracted at that time.

Section 19 in the bankrupt act authorizes sureties, indorsers and persons liable for the bankrupt to prove the debt for which they are liable, when not proven by the creditor, without first paying it, and such debts being provable are released by the discharge. Now, does the payment change the relation of the parties? A surety cannot sue his principal at law until he has paid, and in such case, the suit is not upon the note, but for money paid at the request of the principal. But the contract that the principal will pay the surety if he has to pay the debt arises at the time of making the instrument. The promise is implied from the request and signing. The obligation of the principal arises when the surety becomes liable for his debt. Stedman v. Martinnant, 13 East, 427. The surety's right of action is not complete until he pays, so the statute of limitations does not begin to run until that time. This liability of the principal is recognized by the bankrupt act in the provision that allows him to prove the claim before payment. I therefore hold that within the meaning of the bankrupt act, the liability of the principal to his surety must be considered as having been contracted when the instrument was signed.

This conclusion is supported by the cases of Mace v. Wells, 7 How. [48 U. S.] 272; Baker v. Vasse [Case No. 784]; Crafts v. Mott, 4 Comst. [4 N. Y.] 604; and Vansandau v. Corsbie, 8 Taunt. 550.[3]

As in this case the signing was before January 1, 1869, it necessarily follows that the opposing creditors do not occupy a position to insist upon payment of any portion of their debt before it can be discharged. Their objections are overruled and discharge ordered.

NOTE. This decision is approved and followed in the district of Indiana. In re Montgomery [Case No. 9,732].
Upon the point decided in this case there is some conflict of opinion, but the weight of authority appears to sustain the construction here given. Such is the uniform practice in the Northern district of Illinois, where Judge Blodgett has uniformly granted discharges to both voluntary and involuntary bankrupts in such cases, irrespective of the amount of assets or number of creditors assenting.
It has been approved and followed by Judge Blodgett, in the Northern district of Illinois, in Re Jones [Case No. 7,452], and by Judge Miller, of the supreme court, in Re King [Id. 7,781]. In Re Sheldon [Id. 12,747], Judge Blatchford re-affirms his construction of the act in the Francke Case.
In Re Cerf [Case No. 2,556] the court appears to have held that the amendment of June 22, 1874, applied to all cases, whether commenced before or after the passage of the amendment, and that in cases commenced before the amendment the bankrupt, in order to secure a discharge, must have assets of 30 per cent., or procure the assent of ⅓ in value and ¼ in number of his creditors, and the same opinion is held in Re Griffiths [Id. 5,825].
The amendment of June 22, 1874, to the bankrupt act, does not affect cases commenced before December 1, 1873, nor does the repealing clause affect suits by assignees then pending. The amendments are not inconsistent with the original act except as to cases commenced since December 1, 1873. Hamlin v. Pettibone [Case No. 5,995].
A petition filed on the same day that the amendment was approved, is governed by it, as the amendment took effect the beginning of the day it was approved, and the amendment is retrospective as to pending cases where there had been no adjudication. In Re Williams [Case No. 17,700]. In cases of compulsory bankruptcy actually commenced, though not determined, prior to December 1, 1873, the amendments of June 22, 1874, do not apply, and in voluntary cases, undetermined as well as compulsory cases, section 9 of the amendatory act governs. Singer v. Sloan [Id. 12,899].

