## HOCKETT v. JONES ET AL., EXECUTORS.

AGENCY.—*Revocation.*—*Death.*—*Contract to pay Debt barred by Bankruptcy.* —*Consideration.*—*Delivery.*—*Trustee.*—A discharged bankrupt executed an agreement in writing, specifically binding both himself and his executors and administrators to pay to a creditor an indebtedness barred by his discharge, and then entrusted the same to a third person, to be delivered, on the death of the bankrupt, to the creditor, who until then had no knowledge of its existence.

*Held,* that the agreement is valid.

*Held,* also, that such third party was the agent or trustee of the creditor.

*Held,* also, that such agency was not revoked by the death of the bankrupt, nor could it have been revoked by him.

*Held,* also, that the delivery to such agent was sufficient.

From the Marion Circuit Court.

*W. A. Tipton, S. J. Peelle* and *I. Herr,* for appellant.

*J. T. Dye* and *A. C. Harris,* for appellees.

WORDEN, J.—This was a claim filed by the appellant, against the estate of Barnabas Coffin, deceased. The cause was submitted to the court for trial, on an agreed statement of the facts. Finding and judgment for the defendants. The proper steps were taken to present the questions involved, for the decision of this court.

The following is the statement of the facts, signed by the respective parties:

"On the 16th day of September, 1867, the deceased, then in life, executed and delivered to plaintiff his five (5) certain promissory notes, each for the sum of eight hundred and seventy-two dollars and four cents, and due at five, six,

seven, eight and nine years from date, with interest, for value received, without any relief from valuation or appraisement laws; that two hundred dollars were paid and credited on the first note, September 19th, 1867, the balance of the principal due on said five notes being four thousand one hundred and sixty dollars and twenty cents; that, after the execution and delivery of said notes, the deceased, then in life, was discharged from the payment of the same, with others, by certain proceedings in bankruptcy in the District Court of the United States for the District of Indiana; that subsequent to his said discharge in bankruptcy, and without the knowledge of Hockett, the deceased, then in life, executed to Hockett his certain agreement, which is as follows:

" ' Whereas I executed my promissory notes dated September 16th, 1867, amounting in the aggregate to four thousand three hundred and sixty dollars and twenty cents ($4,360.20), with credits dated September 19th, 1867, two hundred dollars, payable to the order of Samuel Hockett; whereas I have been discharged from all liability to pay said notes, in certain proceedings in the United States District Court of the District of Indiana; now, in consideration of one dollar to me paid in hand by said Samuel Hockett, the receipt of which is hereby acknowledged, and other good and sufficient reasons, I agree to pay said Samuel Hockett said notes, without interest; and, in case said notes are not paid during my lifetime, I hereby agree that my executors shall pay the same out of my estate coming into their hands.      (Signed)      B. COFFIN.'

." ' May 27th, 1876.'

" That, at the time of the execution of said agreement, the deceased delivered the same to his son David, with the verbal direction to hold the same until his death, and then deliver same to Hockett. which David agreed to do. The agreement was delivered to Hockett, by David, after

his father's death, which occurred in August, 1876. Hockett had no knowledge of the existence of the agreement, until after the death of Coffin and its delivery to him by David ; that Hockett never paid the one dollar consideration, mentioned in said agreement, to any one."

Two questions seem to arise upon the agreed statement of facts :

.1. Was the agreement of Coffin based upon a sufficient consideration ?

2. If the consideration was sufficient, was the agreement so delivered as to become valid and binding?

Both of these questions must, in our judgment, be answered in the affirmative.

"A promise to pay a debt contracted during infancy, or barred by the statute of limitations or bankruptcy, is good, without other consideration than the previous legal obligation." 1 Parsons Contracts, 6th ed., p. 434. In *Wiggins* v. *Keizer*, 6 Ind. 252, 257, it. was said by this court, that, " If a bankrupt, after his discharge, or a person under a disability, after the disability is removed, or a debtor whose debt is barred by the statute of limitations, expressly promises to pay his debt, the moral obligation is apparent, and the promise has a substantial basis on which to rest, that is, a consideration actually received." It is, therefore, not material that the dollar mentioned in the agreement was never paid.

The question of delivery is perhaps not so clear, but it is free from serious difficulty. It is true that an instrument, whether operating as an executory contract or as a conveyance, must be delivered, in order to be effectual. The delivery, however, may be actual or constructive. 1 Daniel Negot. Instru. 57.

In this case, the instrument was delivered by Coffin, the maker, to his son David, with directions to hold the same until his, Coffin's, death, and then deliver it to Hockett.

This David agreed to do; and he delivered it accordingly, after Coffin's death. It will be noticed that there were no conditions accompanying the direction to David to deliver the instrument to Hockett upon the death of Coffin, nor did Coffin reserve any right to withdraw or control the instrument.

We do not feel at all embarrassed with the legal proposition, to which our attention has been called by counsel for the appellees, that the powers of an agent terminate upon the death of his principal; because, in our opinion, the proposition has no application to the case. We do not regard David as Coffin's agent, in respect to the delivery of the instrument to Hockett, but rather as the agent of Hockett.

This point is illustrated by the case of *Richardson* v. *Lincoln*, 5 Met. 201. There, Zaccheus Richardson was the payee of certain promissory notes, which he had placed in the hands of Sidney Williams for the purpose of suit upon them. While they were thus in the hands of Williams, the payee endorsed them to the plaintiff, Fanny F. Richardson, his daughter. When the indorsements were made, the notes were still left in the hands of Williams, for the use of the indorsee, and were not otherwise delivered to her. It was objected that there was no sufficient delivery, and upon this point it was said by SHAW, C. J., in delivering the opinion of the court:

"It was then contended, that there was no proof of delivery of the indorsed note by the father to the plaintiff, so as to enable her to sue as indorsee. It is no doubt true, that if the holder of a note simply makes an indorsement upon it, directing it to be paid to a third person, and retains it in his own possession or power, no interest vests in the indorsee. But a constructive delivery is sufficient; any act which puts it into the power or under the control of the indorsee. Even in case of the sale of the goods, de-

Hockett v. Jones et al., Executors.

posited in the hands of a third person, a contract of sale, with an order to the depository to deliver them to the vendee, it is a good constructive delivery.

"In this case, the note was in the keeping of Mr. Williams, as the attorney of the promisee, *and he was then his agent.* But when Richardson, the promisee, negotiated the note to his daughter, and left it in Mr. Williams' custody for her use, he thereby consented to hold it for her, *and became her agent,* and brought an action upon it in her name, which she sanctioned by original order or subsequent ratification. This is abundant proof of actual transfer and constructive delivery, and makes her indorsee and holder of the note, although she never saw it."

So, in the case here, when David consented to receive the instrument, and deliver it to Hockett upon the death of Coffin, he undertook to act in that behalf as trustee or agent for Hockett; and Hockett ratified the agency by receiving the instrument from David.

An unconditional delivery of a bond, by the obligor to a third person, for the use of the obligees, and their subsequent acceptance of it, especially by bringing suit upon it, constitute a sufficient delivery. *Guard* v. *Bradley*, 7 Ind. 600.

Whatever would be a sufficient delivery of a deed for the conveyance of land would seem to be a sufficient delivery of any executory contract for the benefit of the party to whom the delivery is to be made. In the case of *Stewart* v. *Weed*, 11 Ind. 92, it was held by this court, that "delivery to a third person, for the use of the party in whose favor the deed is made provided the grantor parts with all control over the instrument, will make the deed effectual from the instant of such delivery; for the law will presume, if nothing appears to the contrary, that a man will accept what is for his benefit."

We think it clear that Coffin, by placing the instrument in the hands of his son David, with directions to hold it until his, Coffin's, death, and then deliver it to Hockett, without reserving any right or power to recall or change his directions in respect to it, parted with all control and dominion over the instrument; and after that he had no power to revoke what he had thus done. See *Doe* v. *Knight*, 5 B. & C. 671; *Xenos* v. *Wickham*, 14 C. B. N. s. 435, and note; *Xenos* v. *Wickham*, L. R., 2 H. L. C. 296.

There is some analogy between this case and one where money or property is delivered to one for the benefit of another, intended as a gift to the latter, which can not be withdrawn by the donor before delivery to the donee. *Wyble* v. *McPheters*, 52 Ind. 393, and cases there cited.

The fact that the instrument was not to be delivered by David to Hockett, until after the death of Coffin, does not impair the otherwise legal effect of the delivery by Coffin to David for the purpose indicated. The death of Coffin was an event that must, in the course of nature, happen; and the designation of that event merely determined the time when the delivery was to be made to Hockett. In 3 Washburn Real Prop., top p. 288, it is said that "a deed may be delivered to the grantee himself, or it may be delivered to a stranger unknown to the person for whose benefit it is made, if so intended by the maker; and this may be an effectual delivery the moment it is assented to by the grantee, even though the grantor may in the meantime have deceased."

The authorities fully sustain the text. Thus, in *Hatch* v. *Hatch*, 9 Mass. 307, a conveyance was executed by a father to his son, without the privity of the latter, and delivered to a third person, to be kept until the grantor's death, and then delivered over to the grantee, which was accordingly done. This was held to be a sufficient delivery. Much such a case was that of *Foster* v. *Mansfield*, 3 Met. 412.

In *Stephens* v. *Huss*, 54 Pa. State, 20, " The grantor in several deeds, gave them to a third person with directions to hand them after the grantor's death to the persons to whom they were made, or have the deeds of such as might be minors recorded; they were so handed over and recorded respectively. Held, that the delivery was perfect."

In *Stephens* v. *Rinehart*, 72 Pa. State, 434, "L. made deeds to several children and gave them to M. to be recorded after his death and handed to the grantees. Held, the delivery by relation took effect when they were given to M." SHARSWOOD, J., said, in delivering the opinion of the court: " That the delivery of the deed in controversy after the death of the grantor, took effect by relation to the first delivery, seems a point very well settled by the decided cases. *Stephens* v. *Huss*, 54 Pa. State, 20. In *Foster* v. *Mansfield*, 3 Met. 414, SHAW, C. J., said: ' Where the future delivery is to depend upon the payment of money or the performance of some other condition, it will be deemed an escrow. Where it is merely to await the lapse of time or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently. Still it will not take effect as a deed until the second delivery; but when thus delivered it will take effect by relation from the first delivery.' " See, also, the case of *Hathaway* v. *Payne*, 34 N. Y. 92.

The case of *Prutsman* v. *Baker*, 30 Wis. 644, is not in point here. In that case a grantor made a deed, leaving it with one Sheardown, to be retained by him during the life of the grantor, and then recorded and delivered to the grantee, but subject to the control of the grantor during his life. The grantor sought to control the deed during his life, revoked the delivery of the same, and requested that it might be returned to him to be destroyed; but Sheardown

retained the deed in his possession until the grantor's death, when he placed it upon record. The delivery was held to be insufficient. That case differs from the present in a very material point, for there the grantor reserved the right to control the deed during his life; hence he never lost his legal control and dominion over it. Whereas, as has been already said, no such right was reserved by Coffin when he delivered the instrument in question to his son David, nor did he in his lifetime attempt to revoke what he had thus done.

For these reasons we think the court below erred in its decision.

The judgment below is reversed, with costs, and the cause is remanded, with instructions to the court below to allow the plaintiff's claim against the estate, in accordance with the agreement of the deceased.