Root *v.* Espy *et al.*

Filed Feb. 22, 1884.

---

### No. 11,400.

### ROOT *v.* ESPY ET AL.

BANKRUPTCY.— *Effect of Discharge.* — *Extinguishment of Pre-existing Judgment.*—*Lien on After-acquired Real Estate.*—A discharge in bankruptcy operates as an actual extinguishment of all pre-existing debts, claims, liabilities and demands against the bankrupt, which were or might have been proved against his estate in bankruptcy, whether they had been reduced to judgments or otherwise; and when a judgment is discharged and extinguished, the legal incidents, liens and priorities of the judgment are lost or destroyed, as to all real estate acquired by the bankrupt after his discharge in bankruptcy.

From the Superior Court of Marion County.

*F. Winter,* for appellant.

*S. M. Shepard, J. B. Elam* and *C. Martindale,* for appellees.

HOWK, C. J.—This was a suit by the appellant, Kate H. Root, as plaintiff, against the appellees, Eliza R. Espy and Charles L. Espy, husband and wife, as defendants. Issues were joined upon the appellant's complaint, and also upon the appellees' cross complaint, and were submitted for trial to the court at special term. At the request of the parties the court made a special finding of the facts, and thereon stated its conclusions of law in favor of the appellees. Over the appellant's exceptions to the conclusions of law, the court rendered judgment in appellees' favor, in accordance with the prayer of their cross complaint. On appeal to the general term the judgment at special term was in all things affirmed, and from the judgment of the general term this appeal is now here prosecuted.

The only error assigned by the appellant in general term was that the court at special term had erred in its conclusions of law upon the facts specially found. By a proper assignment here the appellant has brought this alleged error before this court.

The facts found by the court at special term were, substantially, as follows:

"Prior to the 16th day of June, 1877, Deloss Root and Jerome B. Root were indebted to the 'Indiana National Bank' and to the defendant Eliza R. Espy, upon separate and distinct debts, both debts being evidenced by promissory notes given by the said Roots to said bank and said Eliza R. Espy respectively. On the 16th day of June, 1877, the 'Indiana National Bank' recovered a personal judgment against the said Deloss Root and Jerome B. Root, in the circuit court of the United States, for the district of Indiana, upon its said indebtedness, for the sum of $6,691.98 and costs, without relief from valuation or appraisement laws. Thereafter, on the 22d day of April, 1878, said Deloss Root and Jerome B. Root filed their individual and partnership petitions to be adjudged bankrupts, in the district court of the United States, for the district of Indiana, on which petitions

their indebtedness aforesaid to the 'Indiana National Bank' and to Eliza R. Espy was properly scheduled.    Thereafter, on May 31st, 1878, the said district court adjudged the said Roots to be bankrupts, both as individuals and as partners, upon their said petition.    The judgment in favor of the 'Indiana National Bank' was assigned to James W. and Simon Yandes, who, on August 19th, 1878, assigned one-half thereof to the plaintiff in this action, Kate H. Root, who is the wife of said Deloss Root.

"Thereafter the said Deloss Root and Jerome B. Root submitted to their creditors for their acceptance a proposition for a composition, and accompanied the same with schedules of their assets and indebtedness, on which latter the debts to Eliza R. Espy and to Kate H. Root and James W. and Simon Yandes, on account of the judgment so recovered by the Indiana National Bank, were included.    Said proposition was accepted by the creditors of said bankrupts, and ratified by the requisite vote in number of creditors and amount of debts; and thereafter, on December 27th, 1878, the same was approved and confirmed by said district court, and said bankrupts given proper certificates of discharge from all their indebtedness, either as individuals or partners.

"Thereafter, on January 31st, 1879, the wife of Jerome B. Root died intestate, the owner in fee simple of the following real estate in Marion county, in the State of Indiana, to wit: Lot number 26 in Pratt's subdivision of out-lot number 171, in the city of Indianapolis, leaving as her only heirs at law said Jerome B. Root, her widower, and two children; and thereafter, on July 15th, 1880, one of said children, viz., William Root, died intestate and without issue, the owner in fee simple of the interest in said real estate, which descended to him at the death of his mother, leaving as his only heirs at law the surviving child and his father, Jerome B. Root.

"Thereafter, on September 10th, 1880, the defendant Eliza R. Espy recovered a personal judgment in the superior court

of Marion county, Indiana, by default, against said Deloss Root and Jerome B. Root, for the amount of her aforesaid debt, being $2,100 and costs, without relief from valuation or appraisement laws; and thereafter, on January 15th, 1883, said Eliza R. Espy caused an execution, upon her said judgment, to be issued to the sheriff of Marion county, Indiana. Thereafter, on January 16th, 1883, said Kate H. Root caused an execution, upon the said judgment in favor of the ' Indiana National Bank,' to be issued to the marshal of the United States for the district of Indiana; and both of said executions were, on January 16th, 1883, levied by the said officers holding the same, respectively, on the interest of said Jerome B. Root in the real estate hereinbefore described.

" Thereafter, on February 10th, 1883, the said interest of said Jerome B. Root in said real estate was sold, after proper notice, by the sheriff of said county upon the execution of said Eliza R. Espy, and at such sale was purchased by said Eliza R. Espy, who paid her bid of $1,400 by receipting the execution, except that she paid the costs in cash; and the sheriff then issued to her a certificate, showing that unless redemption was had, she would be entitled to a deed in fee simple, at the expiration of one year, which certificate said Eliza R. Espy now holds.

" Thereafter, on February 22d, 1883, the marshal of the United States for the district of Indiana sold the interest of Jerome B. Root in said real estate, under the said execution upon the judgment in favor of the ' Indiana National Bank,' after proper notice had been given; and, at such sale, the plaintiff herein, Kate H. Root, purchased the fee simple of the same for $1,500, and paid her bid by receipting the said execution, except as to the costs, which she paid in cash; and the marshal thereupon issued to her a certificate showing that unless redemption was had, she would be entitled to a deed in fee simple for said real estate, at the expiration of one year, which certificate the said Kate H. Root now holds. No redemption has been made from either of said sales.

"Said Kate H. Root claims that her purchase gives her a prior and superior right to the purchase of said Eliza R. Espy, and that said Eliza R. Espy has no other right in said premises than a right to redeem from the purchase of her, the said Kate H. Root. Said Eliza R. Espy, on the contrary, claims that her purchase gives her a superior right to that of said Kate H. Root, and that the said Kate H. Root has not even a right to redeem, her judgment being no lien upon said real estate. These opposed claims are a cloud upon the titles of said parties respectively, under said certificates, and seriously impair the value thereof. The defendant Charles L. Espy is the husband of said Eliza R. Espy."

Upon the foregoing facts the trial court stated the following "conclusions of law:"

"1. That the plaintiff, as against the defendant, is not entitled to the relief she demands in and by her complaint.

"2. That the right in and claim of the defendant to the premises described in the complaint is superior to that of the claim set up by the plaintiff in her complaint.

"3. That the right of the plaintiff, if any, in the premises described in the complaint, is merely a right of redemption from the sale to and purchase of the premises by defendant upon the execution issued on her judgment, mentioned in the complaint and cross complaint in this case; and unless the plaintiff redeems said premises from such sale before the expiration of the 10th day of February, 1884, the plaintiff should be forever enjoined from setting up or asserting any title or claim in or to the said premises, as against the defendant, by reason or growing out of the claim she sets up in her complaint, and her claim thereto and therein from that date, as against such claim of the plaintiff, should be forever quieted." (Signed) "NAPOLEON B. TAYLOR, Judge."

The question presented for our decision, and the only question, is this: Did the trial court err in its conclusions of law upon its special finding of facts? In discussing this question the appellees' counsel say: "We contend that all debts, either

by simple contract, specialty, or of record, are outlawed and extinguished by bankruptcy; that is, the debt as a *legal obligation* of the debtor is completely gone, wiped out and extinguished." Manifestly, the learned judge of the trial court entertained the same views as those so forcibly expressed by appellees' counsel in regard to the effect of bankruptcy upon a pre-existing judgment against the bankrupts. If the trial court and the appellees' counsel are right in this position, and we think they are, then it follows, of necessity, that there is no error in the court's conclusions of law, and the judgment of the general term must be affirmed. If the discharge in bankruptcy absolutely extinguishes all pre-existing debts of the bankrupt of whatever nature, and however evidenced, except those of a fiduciary character, then the claim of the appellant to the real estate in controversy, upon the facts found by the court, can not be equal with, but must be inferior both in law and in equity to, the claim of the appellee. If the pre-existing judgment against the bankrupt, under which the appellant became the purchaser of the real estate and received therefor her certificate of purchase, was wholly extinguished by the discharge of judgment defendants in bankruptcy, then it must be that all the qualities and incidents of the judgment, its liens and priorities, are lost and destroyed. This is the effect of the extinguishment of a judgment, by merger in a succeeding judgment, as declared by this court in the case of *Gould* v. *Hayden*, 63 Ind. 443; Freeman Judg., sections 215, 216 and 388. In the section last cited Mr. Freeman says: "The merger occasioned by one judgment being recovered upon another, as it extinguishes the judgment sued upon, as a cause of action, also destroys its effect as a lien."

This bring us to the consideration of the controlling question in this case, namely, What is the effect of a discharge in bankruptcy, upon a pre-existing judgment against the bankrupt? Does it leave the judgment standing, with the liens and priorities of a valid judgment, to be enforced or not, as

the interests or wishes of the bankrupt may require, by the process of the court? Or does it extinguish such judgment, as a legal and valid obligation, and destroy all its qualities and incidents?

In section 5119, R. S. U. S., it is provided as follows: "A discharge in bankruptcy duly granted shall * * release the bankrupt from all debts, claims, liabilities, and demands which were or might have been proved against his estate in bankruptcy."

It is not claimed that Jerome B. Root, by his discharge in bankruptcy, was not released from the judgment under which the appellant claims; he was relieved or discharged by law from the judgment. It ceased to be a legal obligation on or against him. After his discharge in bankruptcy he was no longer bound by the judgment, and could not be compelled, by any process known to the law, to pay or satisfy the judgment debt. By force of the bankrupt law, and the proceedings had under and pursuant to its provisions, the judgment lost its vitality and existence as a judgment. It had become a thing of the past, a mere dead-letter, and was not even evidence of a subsisting debt. It will not do to say, as it seems to us, that any of the qualities, liens or priorities, incident to a valid and existing judgment of a court of superior jurisdiction, adhered to the mere skeleton of a dead judgment, under which the appellant claims an equitable interest, superior to the appellee's interest, in the real estate in controversy.

We are of opinion that a discharge in bankruptcy operates as an actual extinguishment of all pre-existing debts, claims, liabilities and demands against the bankrupt, which were or might have been proved against his estate in bankruptcy, whether they had been reduced to judgments or otherwise.

The judgment debt of Jerome B. Root, under which the appellant claims in this case, was extinguished by his discharge in bankruptcy, and, therefore, it follows of necessity, we think, that the lien and other incidents of such judgment, as to all after-acquired property of the bankrupt, were lost

and destroyed by such extinguishment. We have found no decision precisely in point upon the question here decided, but it has been repeatedly held, in the courts of last resort elsewhere, that a discharge in bankruptcy operates as an extinguishment of the debts of the bankrupt, which were or might have been proved against his estate in bankruptcy. *Stewart* v. *Reckless,* 24 N. J. 427 ; *Field's Estate,* 2 Rawle, 351 ; *Earnest* v. *Parke,* 4 Rawle, 452 ; *Kline* v. *Guthart,* 2 P. & W. 494 ; *Thomas* v. *Hodgson,* 4 Whart. 492 ; *Reeside* v. *Hadden,* 12 Pa. St. 243 ; *White* v. *Cushing,* 30 Maine, 267 ; *Wardwell* v. *Foster,* 31 Maine, 558 ; *Oliphint* v. *Eckerly,* 36 Ark. 69 ; *Higgins* v. *Dale,* 28 Minn. 126 ; *Walbridge* v. *Harroon,* 18 Vt. 448 ; *Mc-Lendon* v. *Turner,* 65 Ga. 577 ; *Ruckman* v. *Cowell,* 1 N. Y. 505 ; *Murphy* v. *Smith,* 22 La. An. 441 ; *Fraley* v. *Kelly,* 88 N. C. 227 (43 Am. R. 743).

It is insisted, however, on behalf of the appellant, that a discharge in bankruptcy is a mere shield and defence to the bankrupt, to be interposed or not against his pre-existing debts, at his own personal election, and not by his creditors, precedent or subsequent, nor even by the action of the courts, except as he may ask for such action. The moral obligation to pay the discharged debts, of course, continues in force and is of such a character that it will constitute a sufficient consideration, not for the reviving of the old debt, we think, but for the creation of a new debt. Where, however, as in this case, the legal obligation of a pre-existing judgment is discharged and extinguished, by the bankruptcy of the judgment defendants, we are of opinion that the mere moral obligation resting upon the bankrupts to pay the judgment debt is not sufficient to keep the judgment alive, or to continue in force as to such judgment the liens and priorities, incident by law to a valid and subsisting judgment. When the legal obligation of the judgment was discharged and extinguished, the legal incidents, liens and priorities of the judgment were lost or destroyed, as to all property acquired by the bankrupt after his discharge in bankruptcy.

We are aware that much can be said, indeed much has been said, in the very able and exhaustive brief of the appellant's counsel, in support of her position and claim to priority over the appellee's claim in the case in hand; but it seems to us that the conclusion we have reached is in full accord with settled legal principles, and is sustained by much the better reasons.

We find no error in the record of this cause.

The judgment is affirmed, with costs.

Filed Feb. 22, 1884.