# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1887, IN THE SEVENTY-FIRST
YEAR OF THE STATE.

———————◆———————

No. 12,370.

### POST, ADMINISTRATOR, v. LOSEY ET AL.

MARRIED WOMAN.—*Surety for Husband.*—*Mortgage.*—A mortgage executed
in 1875 by a married woman upon her separate property to secure her
husband's debt, was valid, under the law then in force.

SAME.—*Extension of Time of Payment of Debt.*—*Release of Surety.*—A wife,
who is surety for her husband, will be released from liability the same
as any other surety, by an extension of the time of payment of the debt
without her consent, and the lien of a mortgage executed by her to
secure it will be discharged.

SAME.—*Mortgagee Bound to Inquire as to Consideration of Mortgage.*—A person
who accepts a mortgage upon the land of a married woman, knowing
her to be married, and that the land is her separate property, is bound
to inquire as to the consideration, and unless misled by her conduct
or representations, he will be held to have acquired knowledge of
the facts which prudent inquiry would have disclosed.

PRINCIPAL AND SURETY.—*Mortgage.*—*Bankruptcy.*—*Discharge of Principal.*
—The lien of a mortgage given by a surety to secure a debt of the prin-
cipal, is not released by the latter's discharge in bankruptcy.

SAME.—*Discharge of Bankrupt as to Surety.*—*Proof of Claim.*—A debtor is

(74)

relieved from liability to his surety by his discharge in bankruptcy, whether the surety proved the debt against his estate or not.

SAME.—*Moral Obligation of Bankrupt to Pay Debt.—Consideration for New Promise.*—After his discharge in bankruptcy a debtor is released from legal liability to pay a prior debt, but not from the moral obligation, and the latter will constitute a sufficient consideration for a promise to pay such debt.

SAME.—*Agreement to Extend Time of Payment.—Endorsement on Note.—Alteration of Contract.*—Where, after his discharge in bankruptcy, the principal debtor and the creditor agree to an extension, for a definite period, of the time of payment of the debt, and to a reduction in the rate of interest, in consideration of which the former agrees to pay the debt at the time stipulated, and the agreement is endorsed on the back of the note originally given, the face of the note and the endorsement are to be construed together, and together they constitute the contract between the parties. *Huff* v. *Cole*, 45 Ind. 300, and *Bucklen* v. *Huff*, 53 Ind. 474, distinguished.

SAME.—*Husband and Wife.—Mortgage.—Alteration of Contract.—Release of Surety.*—Where a married woman, in 1875, as surety, joined her husband in the execution of a promissory note, and executed a mortgage upon her separate property to secure it, and the husband was subsequently discharged in bankruptcy, after which, the creditor having knowledge of all the facts, an agreement to extend, for a definite period, the time of payment of the note and to reduce the rate of interest, in consideration of which the husband stipulates to pay the debt, is entered into between the creditor and the husband, without the wife's consent, and endorsed upon the back of the note, there is such an alteration of the contract as releases the wife's property from liability.

From the Marion Superior Court.

*S. Claypool* and *W. A. Ketcham,* for appellant.

*C. Byfield* and *L. Howland,* for appellees.

ZOLLARS, C. J.—On the 2d day of September, 1875, Robert C. Losey, for his own use and benefit, borrowed of appellant's decedent, Jacob Hubner, a sum of money to be repaid in three years.

As evidence of the debt created by the loan, Robert C. Losey and his wife, Emma J., appellee herein, executed and delivered to said decedent a promissory note. At the same time, and to secure payment of the note, Emma J., her husband, Robert C., joining, executed and delivered to said de-

cedent a mortgage upon her separate real estate. She executed the note and gave the mortgage as surety for her husband, and in no other capacity, the money neither having been borrowed nor used by her, nor used for her benefit in any way to make her property primarily liable.

On the 6th day of August, 1878, Robert C. Losey was discharged in bankruptcy from all of his debts, including said note.

On the 29th day of September, 1878, he and the decedent, payee of the note, without the consent or knowledge of Emma J., entered into an agreement, which they endorsed upon the back of the note, as follows:

" In consideration of the extension of time for three years from September 2d, 1878, and the reduction of the rate of interest from ten per cent. to six per cent. per annum, I hereby assume to pay promptly the interest at six per cent. semi-annually, and the principal of the within note on or before September 2d, 1881.                              R. C. LOSEY."

Subsequent to said agreement Robert C. paid several instalments of interest on the note. At the time the note and mortgage were executed, and at the time the above written agreement was made, the payee and mortgagee knew that Robert C. and Emma J. Losey were husband and wife; that the real estate mortgaged was her separate property, and that she executed the note and mortgage as surety for her husband, and in no other capacity.

The above are substantially the facts specially found by the court below. Upon those facts the court rendered judgment in favor of the plaintiff, against Robert C. Losey, for the amount of the note, and for Emma J. for costs, having concluded as a matter of law that, by reason of the foregoing facts, the mortgage was discharged and satisfied, and her real estate released.

The question for decision here concerns the rights of the wife, Emma J. Under the present statutes, a wife may not mortgage her separate property to secure her husband's debts.

The mortgage in suit was executed in 1875. Under the statutes then in force, such a mortgage was valid. Its validity was not affected by the change in the statutes. It is well settled that a wife who has mortgaged her separate property for her husband's debt, when she may do so, is in the position of a surety, and entitled to all the rights of a surety, and that her liability and the mortgage lien are discharged by an extension of time of payment without her consent, if the extension be a binding obligation upon the mortgagee. Her rights in this respect are the same as if she were *sole*. *Trentman* v. *Eldridge*, 98 Ind. 525 (534), and cases there cited ; *Bank of Albion* v. *Burns*, 46 N. Y. 170 ; *Smith* v. *Townsend*, 25 N. Y. 479.

Relying upon this rule of law, counsel for Emma J. contend that the agreement between the husband and the decedent, the payee, endorsed upon the back of the note, operated as an extension of the time of payment, and thus released her property.

In response to that contention, counsel for appellant contend, in the first place, that the evidence does not show that the decedent, payee, at any time had notice that Emma J. was surety for her husband, and that, hence, she can not avail herself of the rule which releases a surety by an extension of the time of payment; and, in the second place, that she can not avail herself of that rule for the reason that the husband had been discharged in bankruptcy, and thereby became a stranger to the note. These in their order. In order that an extension of the time of payment may release the surety, it is essential that the payee shall have knowledge of the suretyship. *Davenport* v. *King*, 63 Ind. 64; *McCloskey* v. *Indianapolis, etc., Union*, 67 Ind. 86 (33 Am. R. 76) ; *Arms* v. *Beitman*, 73 Ind. 85 ; *Gipson* v. *Ogden*, 100 Ind. 20.

When, however, a person accepts a mortgage in his favor upon the separate property of a married woman, knowing her to be a married woman, and that the property is her separate property, he is bound to inquire concerning the con-

sideration, and ascertain, if he may, by reasonable inquiry from her, whether it is for the benefit of another; and unless misled by the conduct or representations of the wife, he will be held to have acquired knowledge of the facts which prudent inquiry would have discovered. *Cupp* v. *Campbell*, 103 Ind. 213. See *Smith* v. *Townsend, supra.*

Under this rule, and under a less liberal rule, there is evidence sufficient to justify the court below in finding that the payee knew that Emma J. was a married woman, and that she was mortgaging her separate real estate to secure a debt of her husband, notwithstanding she signed the note with him. Being a married woman, she was not personally liable upon the note.

There was in the mortgage an agreement to pay the amount thereby secured. That agreement made the mortgage effective so far as the right to foreclose was concerned, but created no personal liability against her. *Trentman* v. *Eldridge, supra.* Robert C. Losey was discharged in bankruptcy from all his debts, including that for which the mortgage in suit was given. That discharge released him absolutely from all legal and personal liability upon the note, and the agreement to pay contained in the mortgage. *Root* v. *Espy*, 93 Ind. 511. Ordinarily a surety is released when the debt for which he is surety is discharged; and ordinarily a mortgage given to secure the payment of a debt, and having in it no promise to pay such debt, becomes ineffectual, and is barred when the debt is barred or in any way discharged. *Lilly* v. *Dunn*, 96 Ind. 220; *Bridges* v. *Blake*, 106 Ind. 332.

Those general rules apply where the discharge of the principal debt and debtor is by some act or neglect of the creditor, and not to a discharge by operation of law, being as it is, against the consent and beyond the power of the creditor. *Phillips* v. *Solomon*, 42 Ga. 192. In speaking of the rights and liabilities of sureties, and the effect of the bankrupt law thereon, the court there said: " We are inclined to think * * * that it was not the intent of Congress to do anything

more than to declare that the *act* should not be *construed* so as to discharge sureties, and that this was done not so much to fix the law of the case, as by way of caution to prevent the act·from being construed to have an effect that, by its terms, it would not have. In other words, the *contract* of a surety, as it is understood in the commercial world, is always conditioned that the surety shall *not* be discharged by the bankruptcy of the principal."

It was further said that the sections of the bankruptcy law upon the subject of sureties were only in furtherance, and declaratory of, what would have been true had those sections not been put in the act. The court also quoted with approval the following from Theobald on Principal and Surety : " The obligation of the surety also, in general, becomes extinct, by the extinction of the obligation of the principal debtor. An exception to this rule takes place, whenever the extinction of the obligation of the principal arises from causes, such as bankruptcy and certificate, which originate with the law, and not in the voluntary acts of the creditor." See, also, *Gregg* v. *Wilson,* 50 Ind. 490 ; and, to the same effect, 1 Parsons Notes and Bills, p. 249 ; 1 Parsons Contracts, 29 ; *Ward* v. *Johnson,* 13 Mass. 148 ; Blumenstiel Law and Practice in Bankruptcy, p. 543.

Whatever may have been the purpose or necessity of it, the bankrupt law under which Losey was discharged provided in explicit terms, that no discharge under it should release, discharge, or affect any person liable for the same debt for or with the bankrupt, either as endorser or surety, etc. Bump Law and Practice of Bankruptcy (9th ed.), p. 732, and cases there cited. See, also, *King* v. *Central Bank,* 6 Ga. 257 ; *Hall* v. *Fowler,* 6 Hill, 630 ; *Camp* v. *Gifford,* 7 Hill, 169 ; *Knapp* v. *Anderson,* 15 N. B. R. 316 ; *Gregg* v. *Wilson, supra.*

The above mentioned provision of the bankrupt act, as interpreted by the courts, and the general principles of the law, require a holding here that the mortgage in suit was not

discharged by the discharge in bankruptcy of Robert C. Losey, the principal debtor. *In re Hartel*, 7 N. B. R. 559. See, also, *Catterlin* v. *Armstrong*, 101 Ind. 258.

Emma J. having mortgaged her property for the debt of Robert C., and thus occupying the position of surety, he was liable to her for whatever might be collected from her property in payment of the debt. In that sense, he was her debtor. She was in a position to have caused the debt, to secure which the mortgage was given, to be proved against the estate of the bankrupt debtor, in order that it might be reduced by whatever dividends were made, if any. Such proof was expressly authorized by the bankrupt law. And because that proof might have been made, the discharge of Robert C. Losey discharged him from all liability to Emma J., by reason of the mortgage. Blumenstiel Law and Practice in Bankruptcy, p. 545; Bump Law and Practice of Bankruptcy, p. 582; *Mace* v. *Wells*, 7 How. (U. S.) 272; *Baker* v. *Vasse*, 1 Cranch C. C. 194; *Hunt* v. *Taylor*, 4 N. B. R. 683; *Kerr* v. *Hamilton*, 1 Cranch C. C. 546; *In re Perkins*, 10 N. B. R. 529; Brandt Suretyship, section 189.

It results from what we have said, that after the discharge of Losey in bankruptcy, he was neither liable upon the note or otherwise to the payee, nor was he in any way liable to Emma J., who, by reason of the mortgage upon her separate property, occupied the position of surety.

Did, then, the agreement between the bankrupt debtor and the payee and mortgagee, release her and her property as surety?

The rule is universal, that an extension of the time of payment by the creditor, by a binding contract with the principal, and without the knowledge and consent of the surety, will release the surety.

While there is no substantial disagreement between law authors and courts as to the reasons upon which the rule rests, there is some diversity in the statement of those reasons.

It is sometimes said that the reason why an extension of

the time of payment discharges the surety is, that he would
be entitled to the creditor's place by substitution, and the
creditor, by agreement with the principal debtor for an ex-
tension of the time, without the surety's consent, disables him
from suing when he would otherwise be entitled to do so,
upon payment of the debt. The case of *Tiernan* v. *Wood-
ruff*, 5 McLean, 350, was made to rest upon that reason.
There, after the maturity of the note, and after the discharge
in bankruptcy of the principal debtor, the creditor entered
into a scaled agreement with him, without the knowledge or
consent of the surety, and for a valuable consideration, that
he, the creditor, would not, for the space of two months,
commence any proceedings in law or equity, or otherwise,
against him, the principal debtor, upon the note. It was
held that our bankrupt law extinguished the debt of the
bankrupt, even against the surety; and that after the dis-
charge of the principal debtor, the surety had no remedy but
to present his demand against the estate of the bankrupt,
and that he had no recourse against the bankrupt.

At the close of the opinion it was said : "The time given
to Romeyn (the bankrupt), under these circumstances, by no
possible means, could have operated to the prejudice of the
defendant (the surety). The settled rule of law, therefore,
as to the effect of giving time to the principal debtor, does
not and can not apply in this case. After the extension com-
plained of, as well as before it, the endorser could have proved
the extent of his liability against the bankrupt's estate, and
that was the only remedy, which, under the circumstances, the
law gave him."

The same reason for the rule has been made prominent in
some of our own cases. In some of the cases it has been
said, that the agreement must be such as to tie the hands of
the principal debtor, and fetter and embarrass the surety.
*Wingate* v. *Wilson*, 53 Ind. 78; *Bucklen* v. *Huff*, 53 Ind.

474; *Dickerson* v. *Board, etc.,* 6 Ind. 128; *Harbert* v. *Dumont,* 3 Ind. 346.

Citing the case of *Tiernan* v. *Woodruff, supra,* Judge Story, in his work on Promissory Notes, at section 415, in speaking of an extension of the time of payment by the creditor, said : " Or, if being for a valid consideration, it be of such a nature that the maker can by law obtain and entitle himself to the same delay without the consent of the holder (as where the holder had been already discharged from the note in bankruptcy), then the agreement will not operate as a discharge of the endorsers, for the reason that the endorsers can not, under such circumstances, be injured by the delay, or if injured, it is by operation of law, and not dependent upon the act of the holder."

Citing that case, also, Mr. Daniel, in his work on Negotiable Instruments, at section 1313, said : " The reason why extension of time of payment discharges the surety is that he would be entitled to the creditor's place by substitution ; and if the creditor, by agreement with the principal debtor, without the surety's assent, disables himself from suing when he would be otherwise entitled to do so, and thus deprives the surety, on paying the debt, from immediate recourse on his principal, the contract is varied to his prejudice—hence he is discharged. But this principle on which sureties are released 'is not a mere shadow without substance. It is founded upon a restriction of the rights of the sureties by which they are supposed to be injured.' Therefore, when there is a legal impossibility of injury, the principle does not apply. This was decided to be the case where the maker of a note was a discharged bankrupt ; and an agreement between him and the holder for two months' delay, although on a valid consideration, it was held did not discharge the endorser, because the latter could not, by making payment, have recourse against him."

If the rule releasing sureties by an extension of the time of payment rested upon the reason above mentioned, and

upon none other, it would, perhaps, be the duty of the court to hold here, that the mortgage by Emma J. was not released by the agreement made and endorsed upon the back of the note. But the rule, we think, rests also upon another reason, quite as important and controlling as that already named, and that is, that a valid and binding agreement between the creditor and the principal debtor, without the consent or knowledge of the surety, for an extension of the time of payment, is a modification or alteration of the contract for the performance of which the surety obligated himself, or bound his property.

That reason is recognized, if not asserted, in some of our own cases. The general doctrine, with an exception which we need not here notice, as declared by all of the authorities, is, that in order to release the surety, there must be a new contract between the creditor and principal debtor, fixing the time of payment at a different date from that fixed in the original contract; that the contract for extension must be based upon a new and sufficient consideration, and that the extension must be to a fixed time, so that the contract may embody the necessary elements of certainty; in short, that the contract for extension must embody the necessary elements of a valid and binding contract. See *Wingate* v. *Wilson, supra; Chrisman* v. *Perrin,* 67 Ind. 586; *Hogshead* v. *Williams,* 55 Ind. 145; *Coman* v. *State, ex rel.,* 4 Blackf. 241; *Harter* v. *Moore,* 5 Blackf. 367.

In the case of *Pierce* v. *Goldsberry,* 31 Ind. 52, it was said, in speaking of the release of sureties by an extension of the time of payment: " It takes from the surety a right which he had under the contract into which he entered, the exercise of which may be essential to his indemnity." And, again: " Sureties are favorites, and will not be held beyond the strict scope of their engagements."

In Daniel on Negotiable Instruments, at section 1312, it is said: " The principle that whatever discharges the principal discharges the surety is of extended application, and it is

operative whenever anything is done which relaxes the terms of the exact legal contract by which the principal is bound, or in anywise lessens, impairs, or delays the remedies which the creditor may resort to for its assurance or enforcement."

In Story on Promissory Notes, at section 414, is this: "On the other hand, the endorsers, by such an agreement for credit or delay for a prolonged period without their concurrence, would, if the doctrine were not as above stated, be held liable for a period beyond their original contract, and might suffer damage thereby; or, at all events, would be bound by a different contract from that into which they had entered."

In stating the reason of the rule releasing sureties by an extension of the time of payment, Mr. Brandt, in his work on suretyship, at section 296, said: "The reason is, that the surety is bound only by the terms of his written contract, and if those are varied without his consent it is no longer his contract, and he is not bound by it. It therefore follows, that the fact that the principal is insolvent, or that the extension would be a benefit to the surety if he remained bound, makes no difference in the rule. Moreover, the surety has a right when the debt is due, according to the original contract, to pay it, and immediately proceed against the principal for indemnity, and he is deprived of this right by such an extension of the time of payment."

In the case of *Ide* v. *Churchill*, 14 Ohio St. 372 (383–4), Judge RANNEY said: "Every contract is composed of the material terms and stipulations embraced in it, and, among these, none is more important than the time of performance. It follows, from the principles already stated, that whatever changes any of these material terms and stipulations, so as to destroy the identity of the obligation to which the surety acceded, necessarily discharges him from liability. An engagement to pay money in six months, is not the same as one to pay it in twelve months; and if the creditor, by a valid agreement with the debtor, extends the time of performance

from the shorter to the longer period, he supersedes the old obligation by the new, and can not enforce payment until the longer period has elapsed. If the surety is sued upon the old agreement, to which alone his undertaking was accessory, he has only to show that *that* has ceased to exist, and no longer binds his principal; and if he is sued upon the substituted agreement, he is entitled, both at law and in equity, to make the short and conclusive answer—*Non hæc in fœdera veni.* But such an agreement between the principal parties is perfectly valid and legal; and until some method can be devised for depriving the principal of the benefits of a valid agreement, or of binding the surety to an agreement to which he never acceded (a work hitherto thought not to be within the powers of either courts or Legislatures), the discharge of the latter must ensue. I am very well aware, that this discharge has been often thought to rest upon the injurious consequences of such arrangements, either real or possible, upon the rights and interests of the surety; and, undoubtedly, in most cases, such would be their necessary tendency. But if it rested upon this ground alone, it would be very difficult, upon equitable principles, to extend the relief beyond the actual injury; while it is universally agreed that they work a total discharge, and extend to cases where no possible injury to the surety, could have ensued."

In line with the above case, see *Valley National Bank* v. *Meyers,* 17 N. B. R. 257; *Huffman* v. *Hulbert,* 13 Wend. 375; *Schnewind* v. *Hacket,* 54 Ind. 248.

In the case of *Haden* v. *Brown,* 18 Ala. 641, it was held, as in the Ohio case, *supra,* that the surety was discharged by an extension of the time of payment, because such an extension was a change and alteration of the contract.

A surety is bound only by the strict terms of his engagement.

He assumes the burdens of a contract without sharing its benefits. He has a right to prescribe the exact terms upon which he will enter into an obligation, and insist upon his

discharge if those terms are not observed.   It is not a question whether he . is harmed by a deviation to which he has not assented.   He may plant himself upon the technical objection, *non hæc in fœdera veni*—this is not my contract. *Markland Mining and Mnfg. Co.* v. *Kimmel,* 87 Ind. 560; *Weed Sewing Machine Co.* v. *Winchel,* 107 Ind. 260; *City of Lafayette* v. *James,* 92 Ind. 240 (47 Am. R. 140).

In the case before us, Emma J. mortgaged her separate property as security for the performance of the contract between her husband, the debtor, and appellant's decedent, the payee, as that contract was evidenced by the note.   That contract, as thus evidenced, measured and fixed the manner and extent to which her property was to become liable.   *Irwin* v. *Kilburn,* 104 Ind. 113 ;· *Weed Sewing Machine Co.* v. *Winchel, supra.*

If, then, there has been a modification or alteration of that contract, the mortgage can not be foreclosed.   If there has been such a change or modification, the property of Emma J. can not be made liable as security for the original contract, because it no longer exists as originally made, nor as security for the contract as changed, because that would be to make the surety liable beyond the scope of the contract. The note is not the contract, but the evidence of it.   In some of the cases above cited, it was expressly held that an agreement between the creditor and principal debtor for an extension of the time of payment, not endorsed upon the note or written instrument, so far as appears, operated as a modification and change of the contract as evidenced by the note or written instrument.

Here, Losey, the principal debtor, and the payee, not only agreed that the time of payment should be extended beyond the time as originally agreed upon and named in the note, but also agreed upon a rate of interest for the future different from that originally agreed upon and named in the note. Not only that, but they endorsed the agreement upon the note.   The agreement thus endorsed upon the note operated·

as a modification and change of the original agreement. In other words, after the consummation of the latter agreement, endorsed upon the back of the note, Losey and the payee were no longer bound by the agreement as written upon the face of the note, but by that agreement as modified and changed by the subsequent agreement endorsed upon the back of the note. After that endorsement, their agreement was to be ascertained by an examination of the face of the note and the endorsement. The two writings are to be construed together. Together they constitute the contract between Losey and the payee. To hold otherwise, would be to hold that the latter agreement was and is of no validity whatever. The latter agreement, by its terms, is to pay the note as written, with a change in time and rate of interest. That there was a sufficient consideration for that agreement there can be no doubt. In consideration of the change of time and rate of interest, Losey exchanged a moral obligation only for a legal liability.

In our conclusion that the contract between Losey and the payee is evidenced by the face of the note and the endorsement upon the back of it, we are fully supported by the cases of *Beckner* v. *Carey*, 44 Ind. 89, and *Harden* v. *Wolfe*, 2 Ind. 31. It is not easy, if it is possible, to reconcile with those cases the cases of *Huff* v. *Cole*, 45 Ind. 300, and *Bucklen* v. *Huff*, 53 Ind. 474, from the opinion in each of which cases, it may be remarked, there was a dissent by one of the judges. There are some differences between the endorsement upon the back of the note in the case before us and the endorsement upon the back of the notes in those cases. The cases may, therefore, be distinguishable. But if there were no differences, we should disapprove those cases and follow the cases of *Beckner* v. *Carey*, and *Harden* v. *Wolfe*, *supra*. The contract between Losey and the payee, as evidenced by the face of the note and the endorsement upon the back of it, is not the contract between them as it existed at the time Emma J. executed the mortgage, and to secure

the performance of which on the part of Losey she mortgaged her separate property. Losey and the payee changed that contract without her consent or knowledge by agreeing upon a different rate of interest and a different time for payment.

The contract to secure which she mortgaged her property can be enforced by no one, and for the contract as changed neither she nor her property is liable. To hold her property liable upon the original contract as evidenced by the note, would be to hold it liable for the default in payment by Losey, three years before he could be in default under the contract as changed; and to hold her property liable upon the changed contract, would be to hold it liable for a contract different in time of payment and rate of interest from that which entered into and formed a part of the contract as evidenced by the mortgage. To hold her property liable upon the original contract, would be to measure the liability of the principal by one standard, and the liability of the surety by another and different standard. But it is said, that because Losey had been discharged in bankruptcy from all his debts, he became a stranger to the note, and that, therefore, the change in the contract agreed to by him can not affect Emma J. or the mortgage given by her.

In answer to that it is sufficient to say, in the first place, that by his discharge Losey did not become, in every sense, a stranger to the note. The discharge released him from all legal liability upon it, and in that sense extinguished the debt; but it did not pay the debt, nor release him from the moral duty of paying it. The moral obligation was a sufficient consideration for his subsequent promise to pay it. *Hockett* v. *Jones,* 70 Ind. 227 ; *Shockey* v. *Mills,* 71 Ind. 288 (36 Am. R. 196); *Meech* v. *Lamon,* 103 Ind. 515 (53 Am. R. 540) ; *Wills* v. *Ross,* 77 Ind. 1 (40 Am. R. 279); *Jenks* v. *Opp,* 43 Ind. 108.

In the second place, the bankruptcy of Losey did not destroy, change or affect the contract of the surety. Emma J. mort—

gaged her property to secure the performance of the contract between Losey and the payee as it existed at the time the mortgage was executed. The discharge of Losey from legal liability upon that contract did not, and could not, affect her rights. His discharge from legal liability upon the contract did not destroy or alter it. To hold that it did, would be to hold that it absolutely released the mortgage. The contract between Losey and the payee, so far, at least, as the surety was concerned, remained the same after as before the discharge of Losey.

The only difference was, that by reason of his discharge, he was no longer legally liable upon the contract. He might, however, waive the immunity afforded by his discharge, and pay the debt according to the terms of the note. To secure the performance of the contract according to the terms of the note, and in no other way, the separate property of Emma J. was mortgaged. In order that Losey might again become liable for the payment of the principal sum, the payee consented that the contract might be changed as to the time of payment and the rate of interest. The contract, as evidenced by the face of the note and the endorsement upon the back of it, thus became the contract between Losey and the payee. By the change, the contract as originally executed ceased to exist, both as a legal and moral obligation on the part of Losey. And this is so, whether the new promise be regarded as a revival of the original contract, so far as consistent with it, or whether it be regarded as an entirely new contract.

This suit is really upon the changed contract, because copies of the face of the note and the endorsement upon the back of it are both filed with the complaint as the cause of action.

In any view that may properly be taken of the case, it must be held that the property of Emma J. is no longer liable. As the court below so ruled, the judgment is affirmed, with costs.

Filed May 23, 1887.