MATTIX, ADMINISTRATRIX, *v.* LEACH ET AL.

[No. 1,802.   Filed May 7, 1896.   Rehearing denied September 30, 1896.]

BILLS AND NOTES.—*Purchase of Note by Maker Who Has Been Discharged in Bankruptcy.*— A creditor who sells a claim to a debtor who is under no legal liability to pay the same, because of his discharge in bankruptcy, cannot thereafter question his capacity to purchase on the ground that such debtor would not be permitted to enforce it against his sureties.   *pp. 115, 116.*

SAME.—*Executory Sale of Note.*—The sale of a negotiable promissory note is executory merely, and the title does not pass, where at the time of the contract of sale the note was not delivered, and the time for delivery was not fixed, although there was a partial payment at the time of sale, and further future payments of the consideration. *pp. 116–118.*

BANKRUPTCY.—*Partnership Debt.*—An individual discharge in bankruptcy, purporting to relieve the bankrupt from all debts provable against him, operates upon partnership as well as individual debts, although the partnership was not brought into bankruptcy. *p. 120.*

From the Tipton Circuit Court.   *Reversed.*

*B. C. Moon* and *Conrad Wolf,* for appellant.

*J. C. Blacklidge* and *C. C. Shirley,* for appellees.

GAVIN, C. J.—Appellant sued upon a promissory note executed to the decedent whose estate she represents.   Judgment was rendered in favor of appellees upon a special verdict.   The questions we are called upon to decide arise upon this verdict.   The material facts are as follows:

April 2, 1877, E. W. Hinton and John M. Leach, partners, executed their firm note for $700 to the decedent, James Mattix, with appellees, Sumption and Charles Leach, as sureties. August 31, 1878, said John M. Leach filed in the United States District Court his petition in bankruptcy asking to be discharged from all debts embraced within the bankruptcy law and including said note sued on.   May 12, 1879, he was duly discharged from all debts provable under such law.   Soon after its execution the other makers of said note also became insolvent and so remained for several years.   "In view of the insolvency of said makers and the uncertainty of ever being able to collect anything upon said note, the said James Mattix entered into a verbal agreement with said John M. Leach in the latter part of 1881, or early part of 1882,

for the purchase of said note. That subsequent to such discharge in bankruptcy, said note remaining wholly unpaid, said defendant, John M. Leach, purchased the same and the indebtedness evidenced thereby against his co-defendants, agreeing to pay therefor the sum of $350; said sum to be paid by the sale and transfer to said Mattix of a certain icehouse, in the city of Kokomo, Howard county, Indiana, at the price of $200, and the additional sum of $150 to be paid in ice and brick from time to time; said Leach being then engaged in the brick and ice business and said Mattix being a customer of his. That said Mattix agreed to receive the property so mentioned in full payment of the purchase price of said note and to transfer and deliver the same to said John M. Leach in consideration thereof. Pursuant to said contract of purchase said Leach did, at that time, transfer and deliver said icehouse to said Mattix, and thereafter from time to time until the year 1885 furnished said Mattix, as requested, brick and ice in payment of the balance due on the purchase price of said note to the amount of about $125, the same being received by said Mattix and applied by him on said $350 indebtedness." In 1885 said Leach tendered Mattix $25 in payment of the balance then due on said contract demanding the delivery to him of the note; but the note was at that time lost, as stated by Mattix, and could not be found, and said Leach refused to pay said sum until the note was found and delivered to him. Mattix then agreed to look it up and bring it around so that Leach could get it, but the note continued lost until 1891 when it was found. Mattix did not then deliver it up to Leach, but demanded payment from the sureties, although Leach tendered him $50 in payment of the balance due on the contract price, which was rejected, but the tender has not been kept good.

Appellant argues first, that Leach being an original maker of the note could not become a purchaser even after he had been discharged in bankruptcy; second, that were he capable of being a purchaser that the sale was executory merely, and the title never passed to him; third, that Leach's discharge did not operate upon this debt because the discharge was individual and the debt was partnership.

In support of this first proposition appellant cites *Cox* v. *Hodge,* 7 Blackf. 146; *Klippel* v. *Shields,* 90 Ind. 81; *Montgomery* v. *Vickery,* 110 Ind. 211; *Coleman* v. *Coleman,* 78 Ind. 344. In each of these cases, however, the question under consideration, and that decided, was that one legally bound to pay a debt could not, by a form of purchase, keep it alive and enforce it against his co-obligors, although in the case last cited the court says: "That the sale and transfer of an obligation of a partnership to one of the members operates as a payment, *under ordinary circumstances,* results necessarily from the relation of the purchaser to his co-partners, and from the fact of his being himself a principal debtor. Under supposable circumstances, it may be that in equity the partner, who had taken assignments of the obligations of the firm to himself, would be permitted to keep them alive and enforce them against his copartners for their contributive share of the sums which he had paid for the assignment. This might be done for the purpose of giving him the benefit of securities incident to the debts, when necessary to the doing of justice between the partners, if it could be done without injury to any creditor of the firm." (The italics are our own.)

Thus the court clearly recognizes that, as between the debtor and creditor, there may be a sale and transfer, and that, under exceptional circumstances, the instrument might be kept alive as between the

debtors. We are unable to see any solid ground upon which the creditor should be permitted to rest a claim to dispute the capacity to purchase, of the one to whom he sells, he being at the time under no legal liability to pay the debt. As to the effect of the purchase as between the several debtors, the creditors have no interest. We regard it as undoubtedly true that the bankrupt would not be permitted to enforce against his sureties the note thus purchased. To hold otherwise would be in the highest degree unconscionable. The bankrupt after discharge is, indeed, no longer under legal liability to pay the debt. He is not, however, an entire stranger thereto. There remains the moral obligation to pay, by virtue of which, when the characters of principal debtor and creditor meet in him, they become fused, and the debt is, as to the surety, at least, extinguished upon a principle somewhat analogous to the confusion of the jurist of the civil law. *In re Burton*, 29 Fed. 637; *Post, Admr.*, v. *Losey*, 111 Ind. 74; Story on Prom. Notes, section 439; 1 Pothier on Contracts, 607, *et seq.*

Appellees base their claim to judgment upon the proposition that by the contract of purchase the equitable title to the note passed from Mattix to John M. Leach who thereby became the absolute owner of it. Then, they assert, the decedent being no longer the owner, the action cannot be maintained. Numerous authorities are cited to sustain the position taken, most of them involving sales of goods and chattels of various kinds. These we do not deem it necessary to take up in detail, since, with whatever favor we might view the question, were it an open one, the Supreme Court has closed the door to our favorable consideration of it by its decision in *Weader* v. *First National Bank*, 126 Ind. 111.

In that case one Reiffel had executed her note to

West from whom Weader, a butcher, on July 10, 1887, "purchased" it for $100, payable in cash or meat from time to time at West's option. Fifty cents' worth of meat was paid upon it at the time, and $20 worth prior to Nov. 1, following. The note was not delivered to Weader at the time of the purchase, because West did not have it with him. Nov. 1, 1887, Weader was notified that Reiffel had transferred to the bank a note executed by him to her. Upon Nov. 3, West, in pursuance of the previous contract of purchase, delivered the note to Weader, who sought to use it as a set-off against his note held by the bank. Thus the ownership of the note on Nov. 1 was the vital question. If Weader owned it he could set it off. Otherwise he could not. If Weader did not own it then West remained the owner.

In addition to the facts set forth by the court an examination of the record discloses that West had written his endorsement upon the note prior to Nov. 1. The court held first, that it was not requisite that Weader should then have been the legal owner of the note, but that it would suffice if he were the equitable owner. It further decided that he was not even the equitable owner. We quote from the opinion to show the full extent of the holding. "In *McCormick* v. *Eckland*, 11 Ind. 293, this court held that an assignment of a promissory note is incomplete without delivery.

"The case above was approved and followed in *Wulschner* v. *Sells*, 87 Ind. 71.

"In *Mendenhall* v. *Baylies*, 47 Ind. 575, it is said that to pass the title to a promissory note, either from the maker to the payee, or from the payee to the endorsee, there must be a delivery, actual or constructive.

"Under the contract of purchase here in question no time was fixed within which the note was to be

delivered by West to the appellant [Weader], and until delivery there was no transfer of ownership.

"The appellant was not in a condition to maintain replevin for the note, had West, upon demand, refused to assign the note; the contract was but an executory contract for the purchase and sale of the note. Had West, after making the contract, brought suit against Mrs. Reiffel on the note, she could [not] have made a successful defense to the action on the ground that he was not the party in interest."

The word "not" which we have enclosed in brackets is omitted from the printed report of the case in 126 Ind. on p. 113. It is in the original opinion, however, and in the 25 N. E. on p. 888. The context, even without the original opinion, shows that the omission is a mere clerical error. Again the court says: "When the appellant received notice that the appellee held his note he was not in a position to maintain an action against Mrs. Reiffel on the note she executed to West."

We are wholly unable to distinguish this case in hand from the one to which we have just referred. Whatever differences there may be in the facts, make the Weader case the stronger one to support a conclusion of an executed purchase. In both we have a finding of a "purchase" of the note. In both there is a partial present payment and further future payments, but never full payment. In neither is the note delivered at the time of the contract of purchase nor any time fixed for delivery. In the Weader case a reason is given for the nondelivery at the time. In this case there is none. The loss of the note is indeed presented as cause for nondelivery several years later.

We are, under this authority, constrained to hold that the purchase of the note in 1881 was executory merely, and that the title to the note did not pass.

Counsel for appellant assert that, regarded as an executory contract for the purchase and sale of a chose in action, there could not be any specific performance, but that the decedent had a right upon tender of the balance due to refuse to carry out the contract, and that Leach was then remitted to his action for damages. Had the tender been kept good we should in view of some of the evidence tending to show a waiver by Mattix of his right to demand.ice and brick and a willingness to accept money, be slow to adopt this position. Usually specific performance will not lie to enforce an executory contract for the purchase of personal goods and chattels. *Platter* v *Acker*, 13 Ind. App. 417; *Morgan* v. *East*, 126 Ind. 42.

This rule, however, is not inflexible. The circumstances of a case may be so peculiar as to create special equities which can only be protected by specific performance. Under such circumstances courts of chancery have often afforded relief either affirmatively, or, where the parties are on the defensive, by regarding that as done which should have been done. Story's Eq., sections 618 to 622 inclusive; 3 Pomeroy's Eq., section 1402; Fry on Sp. Perf., section 32. *Very* v. *Levy*, 13 How. (U. S.) 345; *Cutting* v. *Dana*, 25 N. J. Eq. 265; *Wright* v. *Bell*, 5 Price Exch. 325; *Adderley* v. *Dixon*, 1 Sim. and S. 607; *Sup. Lodge K. of P.* v. *Sourwine*, 15 Ind. App. 489.

The fact that if the sureties are compelled to pay this note they are, by reason of John M. Leach's discharge, remediless, while if his contract is enforced, they are protected, would appear to create a strong equity in their favor. Since, however, the case is not presented to us upon facts bringing these propositions before us, we do not undertake to decide them authoritatively. Appellant claims that John M. Leach's dis-

charge in bankruptcy does not free him from the debt sued on. Whether an individual discharge operates upon firm debts when the firm has not been brought into bankruptcy is a much vexed question as to which the authorities are in hopeless conflict. Quite a number sustain the negative of the proposition. *In re Noonan*, 18 Fed. Cases, 298; *Hudgins* v. *Lane*, 12 Fed. Cases, 800; *In re Little*, 15 Fed. Cases, 598; *In re Grady*, 3 N. B. Reg. 228; *Corey* v. *Perry*, 67 Me. 140.

In some of these cases the question was only incidentally involved. In that last cited, it appeared that the bankrupt did not mention the firm debt in his schedules nor ask to be discharged therefrom.

Other decisions of the same judges or others following in the line of these, but limiting the expressions used in them, declare that the discharge is effective, unless there were partnership assets at the time of the adjudication, and that the burden of showing assets rests upon the creditor. *Crompton* v. *Conkling*, 15 N. B. Reg. 417; *In re Johnston*, 17 Fed. 71; *In re Plumb*, 19 Fed. Cases, 886.

There are authorities, however, maintaining that the discharge does operate upon partnership as well as individual debts. These we believe to be founded upon better principle. The discharge purports to relieve the bankrupt from all debts provable against him. Firm debts are undoubtedly provable against the individual estate. It is true they may not, under some circumstances, be permitted to share in the assets until the individual debts are paid, but that does not prevent their being proved and their holder's exercising certain rights allowed creditors. It may be that a firm is abundantly solvent when the adjudication is made, so that there is no cause to bring it into bankruptcy, or it might be that the individual is

insolvent merely by reason of the deficit of partnership assets.

As it seems to us the firm debts are fairly within the province of the statute and the discharge. Judge Lowell, in *Wilkins* v. *Davis*, 15 N. B. Reg. 61, discusses the question elaborately, collates the authorities and sustains his decision by sound logic.

The majority of the court is of the opinion that the ends of justice will be subserved by directing a new trial. The judgment is accordingly reversed with such direction.